PRENTICE and others *vs.* J. ACHORN and S. MEAD.

No person can make a valid contract while he is deprived of his reason by intoxication.

But voluntary drunkenness will not protect a person from liability for torts, or from punishment for crimes committed while in that situation.

Where the defendants obtained from the ancestor of the complainants a conveyance of his property, when he was in a state of intoxication, they were charged with the costs of the suit to set aside the deed.

Feb. 16th.    THE complainants filed their bill in this cause to set aside a conveyance made by A. Achorn to the defendant Mead of his farm in the county of Chenango, in trust for the defendant Jemima Achorn who was living with the grantor as his wife at the time of the conveyance. A. Achorn, *previous to* his death, made his will, by which he gave one fourth of his real and personal estate to the defendant Jemima, during the time she remained his widow, and the residue of his estate he gave to his daughters, the complainants, for life, with remainder to their children in fee. The bill alleged that the deed was obtained by fraud and undue influence, at a time when the grantor was incapable of transacting business; and that Jemima was not his legal wife, she having imposed herself upon him as a widow, and married him while she had a husband still living. The cause was brought to a hearing upon pleadings and proofs, and was submitted on written arguments, when the chancellor ordered a feigned issue to be made up, and tried by a struck jury of the county of Chenango, to ascertain whether the deed was duly executed by Achorn, at a time when he was sober and capable of transacting business, and with a full knowledge on his part of its nature and contents. The jury found a verdict for the complainants on the trial of that issue, and the cause was again set down for a hearing upon the equity reserved.

*H. Bleecker*, for the complainants.

*J. A. Collier*, for the defendants.

THE CHANCELLOR. As the trial took place before the new rules were adopted the court may dispense with the provision requiring a case to be made ; as no evidence was introduced except the written depositions previously before the court. If, upon the depositions before me on the first hearing, there had been such a decided weight of evidence in favor of the defendants as to authorize me now to set aside this verdict on the same testimony, the feigned issue would not have been directed. I consider the testimony as making out a pretty strong case of fraud and imposition on the part of the defendant Jemima ; and in which the character of a public officer, who had certified to the acknowledgement of the deed and had also sworn to its due execution, was deeply implicated. Under such circumstances I was unwilling to make a decree directly in opposition to his official certificate and his oath, without giving the defendants a right to be heard before a jury of the county where he resided. The parties have chosen by a written stipulation to submit the question to that jury, without any new evidence on either side ; and on this point I can only add, that they have decided in the same manner I should have done had I determined the question of fact without their aid. The deed was fraudulently and improperly obtained from the grantor, at a time when he was by reason of intoxication wholly incompetent to execute a valid conveyance. That a person deprived of his reason in consequence of voluntary intoxication is incapable of making a valid contract, is a proposition too plain to admit of doubt. The law on this subject is ably examined by Judge Prentiss in *Barret* v. *Buxton*, (2 Aiken's Rep. 167.) Our statute treats intoxication as a species of insanity, which, when it becomes habitual, renders the drunkard an unfit person to be entrusted with the management of his estate. Voluntary drunkenness will not protect a person from liability for torts, or from punishment for crimes committed while in that situation ; but it renders him for the time incapable of exercising reason, without which he cannot make a valid contract. This deed must be set aside, and the defendants must be charged with the costs of this litigation ; and with the

1830.

Prentice
v.
Achorn.

rents and profits of the complainants' property, which they have unjustly withheld, under the deed.

The defendant Jemima Achorn insists that if the deed is set aside she is entitled to dower in the premises conveyed, and also to the use of an undivided fourth part of the premises, under the will. From the evidence in this case I am satisfied that she had a husband living at the time she married Achorn, in April, 1814. The testimony of the mother and sister of Kelsey, that he was at Catskill about the time and after they had heard of her second marriage, is sufficient to rebut any presumption of death from his previous absence. In addition to this, the defendant Jemima Achorn told her sister-in-law that she had herself seen him after that time. The marriage being illegal and void, she has no claim for her dower in the premises.

The will of Achorn is set out in the complainants' bill and they do not seek to set it aside on the ground that the testator was incompetent. On the contrary, it is a part of the title under which they claim. Although the defendant Jemima Achorn claims this particular part of the estate in fee under the deed, she does not intend to reject the devise to her by the will. If the conveyance was void, this was a part of the real estate of the testator, in which she took a life estate, determinable on her marriage after his death. Whether he was imposed upon or not at the time of his marriage, it is evident he must have known previous to the execution of the will that her former husband had been heard of since that time. The expressions in the will must be taken in reference to the fact that he knew they were not legally married. He designates her by the title of "my wife Jemima," and gives her the use of one fourth of the property while she remained his widow. It was therefore his intention to give her the property by that name, until she should marry after his death, and for life if she remained single. If, as suggested by the complainants' counsel, she has married since the death of Achorn, her estate under the will is terminated. As that question was not raised by the pleadings, and no evidence has been given in relation to it by either party, the decree must be so framed as not to preclude the parties hereafter

from showing a determination of her estate under the will by a marriage previous to the decree. In the mean time I can only direct an account of the rents and profits and the immediate delivery of the possession of three undivided fourth parts of the premises; leaving the complainants to recover possession of the other fourth, and the mesne profits thereof, in an action of ejectment or otherwise, as they may be advis‑ ed, if her estate under the will is determined.

There must be a decree declaring the deed fraudulent and void; directing a release by the defendants of all right con‑ veyed to them by the same; and perpetually enjoining them from asserting any right or claim under that conveyance. And a reference to this decree may be entered by the coun‑ ty clerk in the margin of the record of the deed in his office. The decree must also declare that the defendant Jemima was not the lawful wife of Achorn, and is not entitled to dower in his estate; but that she was by virtue of his will entitled to the use of one fourth part of his estate so long as she re‑ mained unmarried after his death. It must direct the defend‑ ants to deliver to the complainants, immediately on produc‑ tion of a copy of the decree, the peaceable possession of three undivided fourth parts of the premises mentioned in the deed; and that they account to the complainants, before a master in the county of Chenango, for the rents and profits which they have received or might have received for the use of three fourths of the premises since the death of Achorn, and for all damage or waste which they have done or suffer‑ ed to be done to the premises, and that the master allow in‑ terest as shall be equitable; and that on the coming in and confirmation of the master's report, the defendants pay to the complainants or their solicitor the amount reported due, with their costs of this suit to be taxed, and that they be at liberty to enforce this decree by execution. The decree is to be without prejudice to the right of the complainants to sue for a recovery of the other undivided fourth of the premises, and the mesne profits thereof, as they may be hereafter advised.