HARBISON
v.
LEMON.

HARBISON v. LEMON and Others.

| 3b | 51 |
|----|----|
| 112 | 536 |

*A.* conveyed a tract of land to *B.* in consideration of a certain sum of money, and *B.* on the same day obligated himself by a bond, to re-convey the land to the grantor on the repayment of the purchase-money within a certain time. *Held,* that these two instruments of writing, taken together, amounted to a mortgage.

The doctrine that an obligor or grantor shall not be permitted to stultify himself, in order to avoid his bond or conveyance, is not recognized in modern times. But that doctrine, were it recognized, would not prevent the heirs of an obligor or grantor from showing his incapacity to contract.

A conveyance may be avoided by a grantor either at law or in equity, if, at the time of its execution, he was so destitute of understanding as not to know what he was doing, whether the incapacity were occasioned by idiocy, lunacy, or drunkenness.

But the mere circumstance that, in the opinion of a witness, the grantor was too much intoxicated, when he executed the deed, to transact business safely,—is not sufficient of itself to avoid the deed.

ERROR to the *Dubois* Circuit Court.

*Thursday,
May.* 81.

BLACKFORD, J.—This was a bill in chancery filed by *Harbison* against *John Lemon* and others, heirs of *Jacob Lemon.* The bill states that *Jacob Lemon* conveyed to *Harbison,* the complainant, a certain tract of land for a valuable consideration; and that, on the same day, *Harbison* bound himself by a bond to re-convey the land to the grantor, on being repaid the consideration-money within a certain time. It also alleges that *Jacob Lemon* is dead, and that the defendants are his heirs. The prayer of the bill is, that the equity of redemption be foreclosed, and the land sold for the payment of the debt. The answer of the defendants admits the execution of the deed and bond mentioned in the bill. It denies, however, that any consideration was paid for the deed; and avers it to have been fraudulently obtained by the complainant from the grantor, whilst the latter was in a state of intoxication. The only evidence in the cause is one deposition, introduced by the defendants. This deposition states, that the consideration for the deed, as the witness understood from the parties, was as stated in the bill. It alleges further, that the grantor, when he executed the deed, was too much intoxicated to transact business safely. The decree of the Circuit Court is in favour of the defendants.

The deed and defeasance in this case, taken together, amount to a mortgage. The circumstance of the defeasance being a separate instrument from the deed, does not change the nature of the transaction. *Dey*.v. *Dunham*, 2 Johns. Ch. Rep. 182. The defendants wish to avoid this mortgage of their ancestor, by showing him to have been drunk when he executed the deed. There are two questions made in this case. The 1st is, whether a deed can be avoided, in any case, on the ground of drunkenness in the grantor? If it may, then, 2dly, whether the grantor's intoxication, as proved in this case, was sufficiently great to destroy the deed?

The doctrine in *England* for a long time was, that a man should not be permitted to stultify himself. Co. Litt. 247. It was not, however, originally the law of that country, as is shown in Fitzherbert's Natura Brevium, p. 202. Nor is it believed to be the law, either there or here, at the present time. But were that principle still to be recognized, it would not affect the cause before us. It is not the mortgagor himself, but his heirs, that are the defendants in this case; and it was never denied but that the heirs might avoid the bond of their ancestor, on the ground of his incapacity to contract. Co. Litt. 247. *Beverley's Case*, 4 Co. Rep. 123. The incapacity produced by drunkenness, has been often distinguished from that arising from idiocy, lunacy, and the like. It is said by Lord *Coke*, that a drunkard is *voluntarius dæmon;* and that his drunkenness being of his own procuring, affords him no privilege. Co. Litt. 247. This harsh doctrine, however, has been very considerably relaxed since the time of *Coke*. In later and more liberal times it has been held, that the obligor may avoid his bond at law, by proof that they made him sign it when he was so drunk that he did not know what he did. Bull. N. P. 172. And it has been also said, that a man may be relieved in equity, against his deed, on the ground of drunkenness, if he had been made drunk through the contrivance of the grantee. *Johnson* v. *Medlicott*, 3 Peere Wms. 130. The true principle probably is, that a deed may be avoided, either at law or in equity, if, at the time of its execution, the obligor was so destitute of understanding as not to know what he was doing; whether the incapacity be occasioned by idiocy, lunacy, or drunkenness (1).

The 2d question is, was the grantor, in the case before us, so

drunk as to be insensible to what he did? A single witness only is called to sustain the defence. His evidence is, that he came up-to-the parties about the time when the deed was-executed; and. that the grantor was much intoxicated, and too drunk, in the opinion of the witness, to transact business safely. The contract is not shown to be unfair; nor is there any proof that the intoxication was produced by the grantee's contrivance. The defendants rely on the naked fact of drunkenness. To enable them to succeed, they were bound to prove the drunkenness to have been so great as to produce an absolute privation of understanding for the time, similar to cases of idiocy or insanity. This they have not done. The circumstance of the grantor's being too much intoxicated, in the opinion of a witness, to transact business safely, is not sufficient of itself to avoid the deed. It might have been important in making out a case of fraud, but that was not attempted.

*Per. Curiam.*—The decree is reversed with costs. Cause remanded, &c.

C. *Fletcher,* for the plaintiff.

C. I. *Battell,* for the defendants.

May Term, 1832.

HARRISON
v.
LEMON.

(1) The following is Mr. *Starkie's* language on this subject:—"A defendant may avoid even a deed, on *non est factum* pleaded, by evidence that he was made to sign it when he was so drunk that he did not know what he did; in which case it is entirely void. So, *a fortiori,* may he avoid an alleged agreement not under seal, by such evidence. Bull. N. P. 172.—*Pitt* v. *Smith,* 3 Camp. 33.—*Fenton* v. *Holloway,* 1 Starkie's Cas: 126. It has indeed been said, that a Court of equity will not relieve in such a case, unless the inability were occasioned by the management and contrivance of him who gained the deed. *Johnson* v. *Medlicott,* 3 Peere Wms. 130.—1 Ves. & Beam. 30. But, at common law, no such distinction seems to obtain: the law regards the contracts of one who for the time is bereaved of reason, though by his own folly, as void, and does not punish his moral delinquency by subjecting him to obligations, to which assent is essential, when he was incapable of assent. See the observations of *Bayley,* J. in *Bagster* v. *Earl of Portsmouth,* 7 Dowl. & Ryl. 614."—2 Stark. Ev. 5th Amer. ed. 287.

A late *English* case decides the general rule in these cases to be,—that a Court of equity will not assist a person who has obtained, or wishes to get rid of, an agreement or deed, on the mere ground of intoxication: that exceptions to the rule are,—where any contrivance was used to draw him into drink, or any unfair advantage made of his situation,—or where he was in that extreme state of intoxication, which deprived him of his reason, and which even at law would invalidate a deed. *Cooke* v. *Clayworth,* 18 Ves. 12.

An *English* writer, in 1829, thus expresses himself:—"Neither law nor common sense allows that, where one of the essential ingredients is wanting, the

binding consequences of a contract should attach; and mental incapacity, at the time of contracting, is admitted therefore as a good defence, not only in equity but at law. Our law was, indeed, once disgraced by the recognition of a contrary doctrine, supported by a refinement of absurdity, which delared that a man could not be allowed to stultify himself. Co. Litt. 247.—4 Co. 124.—Cro. Eliz. 398. But at this day no stipulation, however testified, whether by parol, by deed, or by record, entered into by one, who at the time was destitute of understanding, will prevail in a Court of equity; and even at common law, nothing but the transcendant authority of a record, which admits of no question, is exempt from impeachment on that ground. Hob. 224. Whether the temporary prostration of the understanding, induced by a fit of drunkenness, is such an incapacity for contracting, as will on that account defeat an engagement entered into under such circumstances, was a question formerly much controverted: Ch. Cas. 107.—Co. Litt. 247: but it seems now to be settled, as good sense and consistency demand, that such an engagement, wanting the requisite assent of the understanding, is invalid both at law and equity. 18 Ves. 15, 16.— Bull. N. P. 172.—3 Camp. 33.—1 Stark. Cas. 126."—Lond. L. M. 533.

A marriage was annulled in an ecclesiastical Court, in a suit by the husband, on the ground of his insanity at the time of the marriage. Lord *Stowell*, in the decision of that case, says—"It is, I conceive, perfectly clear in law, that a party may come forward to maintain his own *past* incapacity; and also that a defect of incapacity invalidates the contract of marriage, as well as any other contract." *Turner* v. *Meyers*, 1 Hagg. C. R. 414.

The opinion in the text is sustained by the following *American* authorities: *Mitchell* v. *Kingman*, 5 Pick. 431.—*Samuel* v. *Marshall*, 3 Leigh, 567.— *Barrett* v. *Buxton*, 2 Aiken's Rep. 167.—*Prentice* v. *Achorn*, 2 Paige, 30.— 2 Kent's Com. 451. The Chancellor, in *Prentice* v. *Achorn*, supra, says: "Voluntary drunkenness will not protect a person from liability for torts, or from punishment for crimes, committed while in that situation; but it renders him for the time incapable of exercising reason, without which he cannot make a valid contract."

With respect to lunacy, it has been decided that a tradesman, having *bona fide* furnished necessaries to a lunatic without being aware of his infirmity, may recover their value in an action at law. *Littledale*, J., in this case, observed that a deed, bond, or other specialty, might be avoided by a plea of lunacy, if, at the time it was executed, the contracting party was *non compos mentis*, but that this rule did not apply to the case before the Court. *Bagster* v. *Earl Portsmouth*, 7 Dowl. & Ryl. 614.

See Chitt. Jun. on Cont. 29, 256.—Shelford on Lunatics, 410–414, 419–422.—Hurlstone on Bonds, 4.—*Ind.* Rev. Code, 1831, p. 287.