### DAVIS and Another *v.* STONESTREET.

A tender of money in a handkerchief, with a statement of the amount and kind, is a sufficient tender.

The maxim in relation to mortgages is, that "once a mortgage always a mortgage."

Courts of Equity do not favor conditional sales; and they will pronounce that a mortgage which, at law, would be a conditional sale.  They are disposed to consider every deed, whatever be its form, which resolves itself into a security for the performance of any act, as a mortgage.

Where a party advanced money to another, and for his security took an instrument from the latter, from the language of which it was doubtful

May Term,
1853.

DAVIS
v.
STONESTREET.

whether a conditional sale of land or a mortgage was intended, but took no note for the money advanced, *held*, that the omitting to take the note was not conclusive that a conditional sale was intended.

Where from the language of an instrument it is difficult to determine whether a conditional sale or a mortgage of lands was intended, if the price was grossly inadequate, it will be construed to be a mortgage.

Thursday,
May 26.

ERROR to the *Miami* Circuit Court.

STUART, J.—*Stonestreet* filed his bill in chancery against *Davis*, *Crispin*, and others, to redeem land alleged to have been mortgaged by him to *Crispin*. Final hearing on the pleadings, depositions, &c., and decree in accordance with the prayer of the bill.

*Stonestreet* was the owner of a canal-land ·certificate, on which he had paid about 206 dollars. There was still a balance due thereon at the land-office. In *December*, 1846, *Crispin* paid into the office, on the land, 46 dollars and 89 cents, and to *Stonestreet*, for the alleged purpose of paying his expenses to *Ohio*, 16 dollars and 36 cents. To secure *Crispin*, *Stonestreet* transferred the canal-land certificate, duly assigned—the assignment absolute in terms. But concurrently therewith, *Crispin* and *Stonestreet* executed the following agreement. After describing the parties, and using language implying a penalty, though there is none, it proceeds: The condition of the above agreement is such, that whereas the above-named *Crispin* hath this day paid into the land-office, at *Peru*, the sum of 46 dollars and 89 cents, for *Stonestreet*, together with the sum of 16 dollars and 36 cents, cash in hand now paid, the receipt of which *Stonestreet* hereby acknowledges, making in all the sum of 63 dollars and 25 cents, for and in consideration of which, said *Stonestreet* hath this day assigned *Wabash* and *Erie* canal-land certificate, No. 4314; now be it known, and it is further agreed by and between the aforesaid parties, that if the said *Stonestreet* shall well and truly pay, or cause to be paid, unto the said *Crispin*, the sum of 63 dollars and 25 cents, on or before *April* 1, 1847, then the said *Crispin* is to assign the said certificate to the said *Stonestreet*; but should the said *Stonestreet* make default, then the said certificate to be and remain

the property of the said *Crispin*. Given under our hands and seals, this 4th day of *December*, 1846. *Peter Crispin*, [seal]. *Henry R. Stonestreet*, [seal].

On the 8th of *January*, 1847, *Stonestreet* and *Davis* met in the state of *Ohio*, and *Stonestreet* appointed *Davis* his agent in relation to the land, giving him a power of attorney to sell and pay *Crispin*.

On the 17th of *April*, 1847, *Crispin* assigned the certificate to the defendant, *Helm*, for 63 dollars and 25 cents, the amount due without interest, taking from *Helm* an obligation similar to that he had given, by which the time for *Stonestreet* to redeem was extended until *September* 1, 1847. This was done with the consent of *Davis*, and *Crispin* delivered *Helm's* obligation to *Davis*, as the agent of *Stonestreet*. The avowed object of *Helm* was to save a doctor bill he had against *Stonestreet*. On the 30th of *August*, 1847, *Davis* procured *Helm* to assign the certificate to him for 87 dollars, which included the 63 dollars and 25 cents, the doctor bill, interest, exchange, &c. *Davis* also delivered the obligation given by *Helm* to *Crispin*.

Shortly after this transfer, *Davis* wrote to *Stonestreet*, who was still in *Ohio*, that the certificate was sold, and could not be redeemed for less than 150 dollars; but he was cautiously silent as to the name of the purchaser. In the fall of 1847, *Stonestreet* returned, tendered to *Davis* the 63 dollars and 25 cents, and interest, and demanded an assignment of the certificate. He held the money in a handkerchief, telling *Davis* the amount and kind of money, and offering it to him. By his amended bill, the tender was continued, and the money brought into Court.

The defendants, in their several answers, admit the facts very much as they are alleged in the bill; but they deny the legal conclusions. They deny that the assignment and defeasance taken together, constitute a mortgage, and insist that the transaction was a conditional sale.

It appears that the value of the land, on the 1st day of *April*, 1847, was from 500 to 600 dollars.

Passing over the obliquity of *Davis's* course as an agent, there are but two questions arising in the case:

1. Was the tender sufficient?

2. Was the assignment to *Crispin* a mortgage or a conditional sale?

On the first question, the authorities are explicit. A tender of money in a bag, untold, is sufficient. Buller's N. P. 155.—3 Steph. N. P. 2602. *Davis* himself regarded it as a tender. His version to one of the witnesses is, that *Stonestreet* had been at his house that day, and offered to pay the amount due on the land certificate in specie; but that he, *Davis*, wanted a settlement of *all* the matters between them. In amount, too, the tender was sufficient. *Helm's* doctor bill was no lien on the land; nor were the other items of exchange, &c., claimed by him and. *Davis*. On these, their remedy, if any, was against *Stonestreet* at law.  All that any of them could hold the land for was the 63 dollars and 25 cents and interest, if the transaction was really a mortgage. If it should turn out to be a conditional sale, the tender and all *Stonestreet's* efforts to redeem, were labor lost.

On the second question it is very difficult to deduce any clear, well-defined rule from the books. There are numerous criteria recognized by the courts to distinguish between a conditional sale and a mortgage. The price, the circumstances, the situation of the parties, &c. But these and other considerations, which have controlled the decisions of courts of equity, are so blended in the reported cases, setting aside, at times, the express agreements of the parties, that it is difficult to deduce a rule at once safe and comprehensive. The element which is regarded as conclusive in one case, is wholly wanting in another; and each case seems to be decided very much on its own peculiar circumstances. On one point the authorities are all agreed, that "once a mortgage always a mortgage." If, says *Savage*, C. J., the transaction was a mortgage in its inception, no subsequent event, whatever, can make it more—not even the agreement of the parties to change it to an absolute conveyance, will be regarded in chancery. *Clark* v. *Henry*, 2 Cow. 324.

The leading case on the side of conditional sales, and which has been followed by the state courts, is *Conway's Executors* v. *Alexander*, 7 Cranch 219. This case in *Cranch* is not, as will be seen in the sequel, inconsistent with the case in *Cowen*, but only distinguished as an elaborate summary of the doctrine of conditional sales.

It appears that courts of equity do not regard conditional sales favorably. They will pronounce that a mortgage which at law would be a conditional sale. They are disposed to consider every deed, whatever be its form, which resolves itself into a security for the performance of any act, as a mortgage. 2 Sumner 486. In *Conway's Executors* v. *Alexander*, *Marshall*, C. J., lays down the rule, that the policy of the law and the leaning of courts are against conditional sales; and doubtful cases have generally been considered mortgages.

Such has become the settled rule of construction. In *Strong* v. *Stewart*, the defendant set up a sale by assignment in absolute terms of all the right, &c., of the party to the land, and denied the fact of a loan. But he admitted, in his answer, that after the assignment was made, he gave the party time to return the money and take back the assignment. *Kent*, Ch., says, "On the strength of the authorities, I shall decree an existing right in the plaintiff to redeem. The admissions in the answer are sufficient to presume a mortgage against the absolute terms of the assignment." 4 J. C. R. 167. A deed absolute, with agreement to redeem in a year, is in equity a mortgage. Saxton's Ch. R. 534. An assignment of a contract for the purchase of land conditioned to re-assign on the payment of a debt, is a mortgage. 1 Paige 617.— 6 *id*. 480.—8 *id*. 243.—6 Gill and J. 275.—1 Blackf. 305, and n. 2. A deed and defeasance taken together, amount to a mortgage. 3 Blackf. 51.—6 *id*. 113.

Some stress is laid on the fact that there was no note taken by *Crispin* from *Stonestreet* for the repayment of the money. This, though an element for consideration in doubtful cases, is by no means conclusive. It is not ne-

cessary to a mortgage that there should be a covenant to repay the money.   2 Sum. 486.

There is one feature in the defeasance conclusive as to the character of the transaction.   That is the price.   If it was a conditional sale, *Stonestreet* derived no benefit from the 46 dollars paid into the land-office.   That payment inured to the benefit of *Crispin* himself.   On this hypothesis, *Stonestreet* sold for 16 dollars, land worth 600 dollars, a fact sufficient of itself to stamp the character of the transaction.   Thus in 8 Paige, *supra*, *Walworth*, Ch., held that a deed absolute, accompanied by an agreement to reconvey, will be considered a mortgage, especially where there is great inadequacy of price.   So, gross inadequacy of price will be sufficient to show that a deed, absolute in form, is only a mortgage.   2 Ired. Ch. 94.   In 7 Cranch, *supra*, great stress is laid on the fact that *Lyles* paid a full price for the property.   In the light of these authorities, 16 dollars for property worth 600 dollars, is too grossly inadequate to support the hypothesis of a conditional sale.

We are referred, with great confidence on the part of the plaintiffs in error, to the case of *Conway's Executors* v. *Alexander*.   We have already alluded to this case on two points, viz., the rule of construction in doubtful cases, and the recognition of price as a consideration in giving character to a conveyance.

In that case, it is true, the conveyance was declared to be a conditional sale.   Yet, when analyzed and compared with that before us, the decision in *Cranch* will be found to make strongly against the party citing it.   It recognizes principles fatal to the case he has made.   It has some similarity to the one now before us, in the following particulars : There was no previous debt; no conversation about a loan or a mortgage, and no separate note or obligation to repay.   Yet these are but a small and comparatively unimportant part of the broad basis on which the decision in *Cranch* rests.

That case is strongly distinguished from this in the following particulars:

The deed, says the Court, is not conclusive either way. The conveyance to trustees to be by them conveyed to *Lyles*, is only evidence of the intention of the parties to avoid the *forms* of mortgage.

*Lyles* considered it a purchase; *Alexander* himself a conditional sale.

*Conway*, the purchaser from *Lyles*, under the immediate eye of *Robert Alexander*, made partition of the land with *Charles Alexander*, without objection from *Robert*.

During the space of nearly three years, in daily sight of *Robert Alexander*, *Conway* made large and valuable improvements on the land.

In his will, while disposing of all his other property, *Robert Alexander* makes no allusion to this land.

The price paid by *Lyles* to *Robert Alexander* was but a trifle below the real value.

The deed from the trustees to *Lyles*, after the time to redeem had elapsed, was, as expressly found by the Court, very probably made with *Robert Alexander's* consent.

In all these marked and conclusive particulars—the deed, the partition, the improvements, the price, the long acquiescence, the will, and the presumed consent to the trustee deed—the case in *Cranch* is distinguished from that at bar. The decision there is not placed upon any one of these considerations, but on the force of all combined. And yet the opinion discloses that some of the judges hesitated. Applying the principles recognized in that case to this, and it is a strong authority favorable to the transfer here being a mortgage, and not a conditional sale.

*Per Curiam.*—The decree is affirmed with costs.

*D. D. Pratt*, for the plaintiffs.

*A. A. Cole*, for the defendant.