May Term,

CUMMINGS *v.* HENRY.

1858.

CUMMINGS
v.
HENRY.

A party may rescind a contract entered into when he was so far intoxicated as to render him incompetent to contract, within a reasonable time.

Whether the party was so intoxicated, is a question for the jury.

A contract of sale of property intended to be used for gaming, is not void under our statutes.

APPEAL from the *Cass* Court of Common Pleas.

*Monday,*
*May 24.*

HANNA, J.—This was an action by *Cummings*, on a note and account, against *Henry*.

Several answers were filed, upon which ˙issues of fact were formed. Trial and judgment for defendant.

The questions in this Court, arise upon the instructions given and refused to the jury.

The note was given by defendant to the plaintiff for a part of the consideration money for a mare purchased by the defendant of the plaintiff. The account was upon the same consideration.

By the pleadings and evidence two questions are made: first, whether the defendant was capable of contracting at the time he made the purchase, and, secondly, whether the contract is void for illegality, and as being against public policy.

There was evidence tending to prove that at the time the defendant made the contract he was intoxicated, and that he purchased the mare to run for a wager in what is commonly called a horse-race, of which the plaintiff was cognizant; and that the defendant offered to return the animal, and demanded a rescission of the contract.

The first instruction objected to is as follows: " If *Henry* was so intoxicated as to render him incompetent to contract, he had a right to rescind the contract at any reasonable time after he became sufficiently sober to know the character of the contract with *Cummings;* and if *Cummings* refused to return the note and take back the property, the contract is nevertheless void, and the recovery on the note is avoided."

Other instructions were given by the Court, which were

May Term,
1858.

CUMMINGS
v.
HENRY.

to the effect that such contract was voidable, at the option of the person who was drunk.

This instruction is said to be too general; that by it, the question is left to the jury to determine the degree of drunkenness that renders a person incompetent to contract; and that such question is one of law, purely, to be determined by the Court. Therefore, the plaintiff asked an instruction, which was refused, as follows:

" A man must be so drunk as not to be able to stand, or write, or understand what he is doing, to avoid his contract on the plea of drunkenness."

This instruction assumes that a man would be responsible for the performance of his contracts, however he might be deprived of reason by intoxication, until he became so drunk that he could not "stand or write." Some men are so constituted as to be able to retain and command their mental powers when much intoxicated, whilst others become wild or imbecile, when laboring under, apparently, a degree of intoxication affecting much less the physical system. The simple question would be, was he competent to contract. That is a question for the jury. It is proper for the Court to present to the jury the rules of law upon the subject, and then the jury determine whether the evidence brings the case within those rules. 6 Blackf. 240.—1 Pars. on Cont. 310 and note.—2 *id.* 573 and note.—3 Blackf. 51.

The next question is made upon the following instruction:

" If *Cummings* sold the mare to *Henry* as a race nag, for the purpose of being run on wager for money or property, and *Cummings* knew that fact, the contract is void as being against public policy."

Other instructions were given tending to the same conclusion.

The appellee insists that a contract, made under the circumstances indicated in this instruction, is void; and cites 2 Pars. on Cont. 253; *Peck* v. *Briggs*, 3 Denio. 107; *Jackson* v. *Walker*, 5 Hill, 27; *White* v. *Buss*, 3 Cush. 448.

In the first authority cited, the following language is used: " All contracts which provide that anything shall be done,

which is distinctly prohibited by law, or morality, or public policy, are void."

This embodies the principle upon which the several decisions to which reference is made were arrived at. The one in *Denio* was a case in which *Peck* and one *Tompkins* made a bet on the election, and they each borrowed the money bet of one *Briggs*, and deposited it with *Briggs* as a stakeholder. Upon the ·decision of the bet, the money was paid to the winner. Suit by *Briggs* for the money loaned; and the Court say that, by the statute of 9 Ann, c. 14, in force in *New York*, securities taken for money knowingly lent to be bet, are void; and that by the statute of *New York* the contract itself is void. So in *Ruchman* v. *Bryan*, the plaintiff had bet 3,000 dollars on a trotting-match, which he lost and paid. By agreement, the defendant was interested in the bet with the plaintiff to the amount of 600 dollars; and upon ascertaining the loss, by his request, the plaintiff advanced that sum for him in paying the loss; and in a suit for the 600 dollars advanced, the plaintiff was defeated—the Court referring to both the *English* and *New York* statutes in making the decision. So in *Jackson* v. *Walker*, the plaintiff had, in 1840, erected a structure called a log, cabin, used for holding political meetings and selling refreshments in, upon its proving a losing business, and the plaintiff expressing the intention of tearing it down, the defendant promised the plaintiff 1,000 dollars if he would not do so, but keep it open until after the election, which he thereupon did; and upon suit brought against the defendant for refusing to pay the 1,000 dollars, the Court held the contract void under the statute of *New York*, which provides, among other things, as follows: "It shall not be lawful to contribute money for any other purpose intended to promote an election of any particular person or ticket," &c. So in *White* v. *Buss*, which was an action for money loaned: "The same evidence by which the loan was proved, tended to show that the money was loaned whilst the plaintiff and defendant, with other persons, were gaming and playing for money at cards," &c. The Court say, "We think the tenor and effect of the

statutes treat gaming, as characterized by the judge's charge in this case, as unlawful; and, therefore, our opinion is, that it is within the principle of the cases cited, that all contracts designed to promote, advance and uphold an unlawful purpose or practice are utterly void."

Now although these decisions appear to correspond in principle with the text of *Parsons*, yet the decisions are made to rest upon the statutory provisions of the several states in which they were delivered. Our statutes are, first, an act touching gaming contracts (1 R. S. p. 305), which renders void " all notes, bills, bonds, conveyances, contracts, &c., when the whole or any part of the consideration thereof shall be for money or other valuable thing won, on the result of any wager, or for repaying any money lent at the time of such wager, for the purpose of being wagered." Other sections following provide for recovering money which may have been lost and paid. Yet other provisions of the statute (2 R. S. p. 435) prescribe the punishment that shall be inflicted for either winning or losing, &c.; or for keeping a house in which gaming is permitted.

It is clear, from these statutes, that it was the intention of the legislature to make gaming for money, or other valuables, an unlawful act; therefore, it is said in argument, that for property sold to a person who intends and purposes using it some way in this illegal business, no recovery can be had.

Our statute makes void two classes of contracts, and all securities taken on them: first, for money, &c., won; second, for money lent at the time of such wager, for the purpose of being wagered. A contract of sale of property to be used in gaming, does not fall within the express provision of this statute; nor can it, as we conceive, be made to fall within the general meaning of our statutes, either upon the subject of gaming, or the contracts connected therewith. In the case at bar, the distinction does not appear to have been sufficiently kept up between transactions in which the sale and the illegal act are so mixed and blended as to form really but one contract, and those where the sale and the illegal act are distinct, and do not neces-

sarily, by the contract, form parts of the same transaction. <span style="float:right">May 'Term,<br>1858.</span>
No doubt a contract expressly providing that a race should
be run for a wager, would be void; as if the contract of sale <span style="float:right">Cummings<br>v.<br>Henry.</span>
in this case had been made by the vendor to depend upon,
or be connected with, the result of a race for a wager.

If a mechanic were to sell guns to persons whom he knew
purposed target-shooting for a wager, we cannot believe
he would be remediless, by the laws in force in this state,
when he should seek to recover the price of such guns.

In the case of *Armstrong* v. *Toler*, the following lan-
guage is used by Chief Justice MARSHALL in delivering the
opinion of the Supreme Court: "Questions upon illegal
contracts have arisen very often, both in *England* and in
this country; and no principle is better settled than that
no action can be maintained on a contract, the considera-
tion of which is either wicked in itself, or prohibited by
law." 11 Wheat. 272.—6 Curtis, 591.

The consideration of this contract was not a wager, nor
that a race should be run for a wager, but it was the deliv-
ery of the animal which perhaps might be used for that
purpose. The consideration of the note is not therefore
wicked in itself, nor is the sale of a horse prohibited by
law.

*Per Curiam.*—The judgment is reversed with costs.

*L. Chamberlin*, for the appellant (1).

*H. P. Biddle* and *B. W. Peters*, for the appellee (2).

(1) Mr. *Chamberlin* cited authorities to the following points:

1. It is no defense to an obligation that it was given for property which the
vendee intended to apply to an unlawful purpose, even though the vendor, at
the time of the sale, knew that the property was thus to be used. *Holman* v.
*Johnson*, Cowp. 341.—Story on Cont. § 624.—Hilliard on Sales, 305, 306.

2. The instructions refused should have been given. Story on Cont. § 45.
—3 Blackf. 51.—6 *id.* 240.

(2) Counsel for the appellee made the following points:

1. Money lent to be used in gaming cannot be recovered back. *White* v.
*Buss*, 3 Cush. 448.

2. No action will lie on a contract made in violation of a statute, or of pub-
lic policy, or against good morals. *Wheeler* v. *Russell*, 17 Mass. R. 258.—
*Warren* v. *The Insurance Co.*, 13 Pick. 518.—*White* v. *Franklin Bank*, 22 *id.*
181.—*Roquet* v. *Rall*, 4 Ohio R. 400.—*Jackson* v. *Walker*, 5 Hill (N. Y.), 27.

3. A party who makes a contract in such a state of drunkenness as not to
know what he is doing, cannot be compelled to perform that contract by the

other party who knew him to be in that state. A man who takes an obligation from another under such circumstances is guilty of actual fraud. Addison on Contracts, 872.

The Court will vigilantly look into contracts made under mental imbecility, especially when coupled with inadequate consideration. *Cruise* v. *Christopher*, 5 Dana, 181.—*Tracy* v. *Sackett*, 1 McCook, Ohio R.—1 Pars. on Cont. 310.