## NANCE *v.* KEMPER.

[No. 5,287. Filed March 31, 1905. Rehearing denied June 6, 1905.]

1. CONTRACTS.—*Rescission.—Fraud.—Drunkenness.*—Rescission of a contract for fraud and drunkenness will not be decreed where no fraud was practiced, unless such drunkenness was such as to render plaintiff incompetent to contract. p. 607.
2. SAME.— *Rescission.— Drunkenness.*— A contract can be rescinded for drunkenness only when plaintiff is shown to have been so drunk as to be deprived of his understanding, similar to cases of insanity or idiocy, and a finding that he was "too much intoxicated fully to realize what he was doing" is not sufficient to avoid such contract. p. 608.

From Tipton Circuit Court; *James F. Elliott,* Judge.

Action by Nimrod Kemper against Theodore M. Nance. From a decree for plaintiff, defendant appeals. *Reversed.*

*Coleman & Carter,* for appellant.
*Gifford & Gifford,* for appellee.

ROBINSON, P. J.—Suit by appellee to annul a contract of purchase of personal property from appellant. A trial by the court upon issues formed resulted in a judgment in favor of appellee for $200 and the cancelation of a note for $100 executed by appellee to appellant.

The special finding of facts shows: About a year prior to the bringing of this action, appellee, about seventy-four years old, and without experience in business except as a farmer, removed from a farm to the city of Tipton, and since that time his former habit of drink had greatly in-

creased, so much so that he remained intoxicated almost continuously. Appellant, from the year 1866 until 1900 was engaged in the saloon business, and during the greater portion of that time appellee was on appellant's bond for the sale of liquor. They were intimate friends. Appellee drank often and excessively at appellant's bar while he was in the business, and continued to drink there, where appellant still made his headquarters, until the time of the transaction in question. During December, 1902, appellee was so under the influence of intoxicating liquors that those connected with him in small business matters considered the propriety of having a guardian appointed for him, as he was becoming incompetent to transact business. On the afternoon of Saturday, December 20, 1902, appellee and Joseph Henry met in a saloon, and, after drinking until both were badly intoxicated, watched the bartender carry on the business, and talked of what a great business it was, and Henry told appellee of a set of fixtures appellee might buy and start in business, and that he (Henry) would tend bar for him. Thereupon appellee directed Henry to see appellant, the owner of the fixtures, and learn what they could be bought for. Appellee and Henry went to the saloon where the fixtures were, and, taking a casual look at them, left the saloon, and appellee sent Henry in to learn the price, and when Henry reported they could be bought for $300 appellee at once sent Henry to tell appellant that he would take them. Appellant had previously told Henry that he would take $250 for the fixtures, and that he could have for his services in selling them all he could get above that sum. Henry had been barkeeper for appellant in the saloon where the fixtures were, and knew appellee and his habits of drink. Appellee and Henry returned to the saloon in which they had been drinking, and, after drinking more, started out and met appellant in front of the saloon, when appellant suggested that they go at once and close up the contract, which they

proceeded to do, going to a real estate office where appellant dictated the contract of sale, and appellee, at appellant's direction, executed his note for $300, due in five days. When appellee left the office he was so intoxicated he fell, and had to be helped to his feet. The property consisted of certain saloon fixtures which were of old style, and not of greater value than $50. Appellee went to his home that evening greatly intoxicated, remained intoxicated all next day, and on the morning of Monday, December 22, began drinking again, when Henry came after him to close the trade. He and Henry went to a saloon and drank. Coming out they met appellant and went in and drank again. At appellant's request they then went to a bank, which held the notes of appellee in a large sum, and, at appellant's direction, appellee gave a note to the bank for $200, and paid the money to appellant, and executed his note to appellant for $100, appellant surrendering the $300 note. "During all these transactions plaintiff was intoxicated, but not so much so as on Saturday evening before, but was too much intoxicated fully to realize what he was doing; that from Saturday noon until Monday morning plaintiff had no recollection as to what he did or where he was; that the defendant knew plaintiff's condition, and that he knew that he was not in condition to transact business, on account of intoxication." Henry was acting as agent of appellant, who paid him $50 for his services. On December 23, 1902, appellee, by his agent and attorney, tendered back to appellant the property and demanded the money paid, all of which was refused by appellant. As conclusions of law the court stated that the contract was null and void, that appellee was entitled to recover of appellant $200, and that the note for $100 should be canceled. Judgment was rendered accordingly.

1. The case, as made by the complaint, is upon the theory that appellant, knowing appellee's habit of exces-

sively using intoxicating liquor, and his appetite for strong drink, induced appellee to drink alcoholic drinks, to the extent that he became intoxicated, for the false and fraudulent purpose and intent of cheating and defrauding him; and that while in an intoxicated condition, thus brought about, appellee was induced to enter into a contract whereby he purchased for $300 certain personal property of the value of $20. The findings are not upon the theory that appellee was induced by appellant to become intoxicated for the purpose of defrauding him out of his property, but if they are sufficient to authorize the conclusions of law it must be upon the theory that appellee was incapacitated by intoxication from making a contract, and that this incapacity was known to appellant at the time of the transaction. See 17 Am. and Eng. Ency. Law (2d ed.), 399. So far as appellant is concerned, appellee's intoxication was voluntary. Even if the inference is authorized that the agent induced appellee to become intoxicated, yet there is nothing in the finding to show that in so doing he was acting for appellant. But fraud is not found as a fact. It is true that fraud might be inferred from appellee's condition at the time the transaction was entered into, taken in connection with the character of the transaction itself; but this court can not draw that inference. As the trial court has not found fraud as a fact, that element is not in the case, and the finding must rest upon the theory that when the contract was made appellee was incapable of contracting because of his intoxication. The simple question then is whether the findings show that appellee was not competent to contract.

2. In *Henry* v. *Ritenour* (1869), 31 Ind. 136, in speaking of an answer based upon intoxication, the court said: "His intoxication seems to have been voluntary, and to have gone to the extent only that he did not clearly understand the business. That is not enough, however, to render his contract void or voidable, in the absence of any advan-

tage having been gained by dealing with him. Mere dullness of intellect, from whatever cause, does not amount to incapacity to contract."

In *Reinskopf* v. *Rogge* (1871), 37 Ind. 207, the court said: "Drunkenness of itself merely, unless fraud be practiced, will not avoid a contract; but if the party be in such a state of intoxication that he is, for the time, deprived of reason, the contract is void." See *Jenners* v. *Howard* (1842), 6 Blackf. 240.

In *Harbison* v. *Lemon* (1832), 3 Blackf. 51, 23 Am. Dec. 376, it is said: "The contract is not shown to be unfair; nor is there any proof that the intoxication was produced by the grantee's contrivance. The defendants rely on the naked fact of drunkenness. To enable them to succeed, they were bound to prove the drunkenness to have been so great as to produce an absolute privation of understanding for the time, similar to cases of idiocy or insanity." See, also, *Musselman* v. *Cravens* (1874), 47 Ind. 1; *Cummings* v. *Henry* (1858), 10 Ind. 109; *Harlan* v. *Brown* (1892), 4 Ind. App. 319; *Joest* v. *Williams* (1873), 42 Ind. 565, 13 Am. Rep. 377.

Tested by these rules, it must be concluded that the findings do not show that appellee was incompetent to contract by reason of intoxication. The strongest statement in the findings upon the question is that he was "too much intoxicated fully to realize what he was doing." We can not presume anything in aid of the findings. If he realized what he was doing, although intoxicated, he was bound, in the absence of fraud. His failure fully to realize what he was doing could result from intoxication that produced no more than "mere dullness of intellect." As the findings come to us, appellee relies wholly upon incompetency to contract because of intoxication, and under the above authorities the findings do not show such incompetency as makes the transaction voidable. While the findings are insufficient to author-

ize a judgment in appellee's favor, yet, we think the ends of justice will be best subserved by ordering a new trial.

Judgment reversed, with instructions to grant appellant's motion for a new trial, with leave to appellee to amend his complaint.