Fitzhugh *v.* Wilcox.

———————•◦•———————

FITZHUGH, committee &c., *vs.* WILCOX and others.

$\frac{12}{88h}\ \frac{235}{120}$

A contract for the sale of real estate, executed by a person who has been, upon inquisition, found to be a lunatic, and of whose person and estate a committee has been duly appointed, is absolutely void; and no action can be maintained thereon, by the committee.

The committee can not by any act of his, in ratifying or adopting it, without the authority and direction of the court, make such a contract good.

THIS was an action upon a contract dated January 1st, 1848, between William Wadsworth and the defendant Wilcox, by which the former agreed to sell, and the latter to purchase and pay for, about 130 acres of land. The price agreed to be paid was $3254,75, $325 of which was paid on making the contract. The complaint alledged that at the commencement of the action there was due of principal and interest, on the contract, $1494,17 besides the payments not yet due, and demanded judgment that the defendant Wilcox should pay the amount due on the contract, with costs of suit, within some short period to be fixed by the court, and in default thereof that the premises be sold for the payment and satisfaction of the amount due and to become due, and prayed for an injunction against all the defendants, to restrain them from cutting or carrying away any wood or timber from said land. The complaint also alledged that the said Wadsworth was a lunatic and that the plaintiff was the com-

mittee of his person and estate, having been duly appointed on the 11th of May, 1847.

The defendants Wilcox and Jewett demurred to the complaint, specifying five causes which contained substantially two grounds of demurrer only. 1st. That it appeared from the complaint that at the date of the contract Wadsworth the vendor was a lunatic, whose person and estate were in the charge of the plaintiff as his committee, and that he was therefore incapable of entering into a contract, and that such contract was absolutely void as against all parties to the same. 2d. That it did not appear from the complaint that the plaintiff as such committee had any authority to sell the land described in the contract, and therefore had no power to ratify and approve a sale made by the lunatic. The two defendants demurred separately, setting out the same identical grounds of demurrer.

*Wood & Chamberlain*, for the plaintiff.

*S. B. Jewett*, for the defendant Wilcox.

*J. L. Clark*, for the defendant Jewett.

*By the Court*, JOHNSON, J. The demurrers do not raise the question of the right of the plaintiff, as a party, to maintain the action upon the contract, conceding its validity against the defendants, and they must therefore be deemed to have waived it. (*Code*, § 148.) Consequently it is unnecessary to consider that point, taken upon the argument.

The questions raised by the demurrer go to the validity of the contract, and its obligatory force as against the defendants. Is this contract, upon the facts stated in the complaint, voidable merely at the election of the lunatic or those in privity with him in blood, or representation, or is it absolutely void?

It has been held that privies in blood and representation may avoid the avoidable deeds of infants and lunatics, while privies in law and estate can not, and that the subsequent purchaser from a lunatic vendor, is such a privy by representation that he

Fitzhugh *v.* Wilcox.

may avoid the prior deed against the privy in estate, whenever such deed might be avoided by the vendor or his heirs. (*Breckenridge* v. *Ormsby*, 1 *J. J. Marsh.* 245.)

This branch of the law upon contracts with lunatics, the extent of the lunatic's liability, and the liability of parties who enter into contracts with them, does not appear to be very well settled. It seems clear that the lunatic himself is liable upon an executed contract for articles suitable to his degree, furnished by a person who did not know of his lunacy and practiced no imposition upon him, and where the subject matter of the contract can not be restored so as to put the parties in *statu quo.* (*Smith's Law of Contracts*, 230. *Dart on Vendors and Purchasers*, 3. *Chit. on Cont.* 197. *Bagster* v. *Earl of Portsmouth*, 2 *C. & P.* 178. *Molton* v. *Cameron*, 2 *W. H. & Gordon's Exch. Rep.* 2187.) It seems equally clear that the lunatic is not liable upon any contract where the other contracting party has taken advantage of his lunacy, whether executed or not. And I apprehend that a lunatic can never be made liable upon any executory contract which he or those who represent him seek to avoid. Our statute (2 *R. S.* 55, § 22) authorizes the court of chancery to decree and compel the specific performance of contracts made by a lunatic while he was capable of contracting, and to authorize his committee to execute a conveyance, but nothing further. The old common law doctrine of Coke and Littleton, that a lunatic would not be heard to stultify himself in avoidance of his contracts, is now every where exploded.

But the liability of the other party, contracting with a lunatic, upon executory contracts, must depend upon the question whether the contract was voidable merely at the election of the lunatic or his heirs or representatives, or absolutely void. The distinction between the void and voidable contracts of a lunatic, does not appear to be entirely settled upon authority, but I apprehend it will be found to be substantially this; that the deeds and contracts of a lunatic, made before office found, are not void but voidable, while those made afterwards are absolutely void. (*Jackson* v. *Gardner*, 9 *Cowen*, 552. *Pearl* v. *McDowell*, 3 *J.*

*J. Marsh.* 658. *Wait* v. *Maxwell,* 5 *Pick.* 217.) How can a person who is judicially declared a lunatic and in the charge of a committee make a contract which will confer any rights or impose any obligations upon any one?

Mutual consent and reciprocity of obligation, which are both generally necessary to the validity of all contracts, must be entirely wanting. The lunatic has no mind capable of assenting or of incurring any obligation. Indeed it seems to me perfectly clear that the judgment of the law which pronounces the party a lunatic and gives over his person and estate to the custody of another, takes away from him, absolutely, all competency to contract, until his rights are restored. The contracts of lunatics are generally void from the period at which the inquisition finds the lunacy to have commenced. But the inquisition is not conclusive evidence of the fact, and the party affected by the allegation of lunacy, may gainsay it by proof, without traversing the inquisition. (2 *Kent,* 450.) This however must be regarded as applying only to such contracts or agreements as were entered into by the lunatic previous to the decree establishing the lunacy and appointing the committee. As to his contracts after that, I think no party would be permitted to alledge the sanity of the lunatic while the disability remained. He must first proceed to restore the lunatic to his rights. The inquisition found and the decree thereon are notice to all the world, and operate as a judicial sentence upon the question.

But the defendants' counsel insist that the defendant Wilcox being competent to contract is bound by the contract if Wadsworth was not, and can not alledge the incompetency of the latter in his defense. Undoubtedly reciprocity of obligation is not always essential to the binding force of a contract upon all the parties to it. And it is a general rule that parties competent to contract, when they enter into contracts with persons whom the law shields from responsibility on the ground of mental infirmity, can not object to the inability of the latter as a defense. But this applies only to voidable contracts, while they remain executory, and are not rescinded by the person at whose option they may be annulled. (2 *Kent,* 336. *Bac. Ab. tit. Infancy*

Fitzhugh *v.* Wilcox.

*and Age, J.* 4.) Such contracts are generally of binding force until the party having the right of avoidance has exercised it, and rendered the contract a nullity. After that, it is certain no one could enforce it. It would then stand in the same situation precisely as a contract absolutely void in the beginning.

This rule has repeatedly been applied to contracts with infants, and is equally applicable to contracts with lunatics. Where they are voidable merely, actions may be maintained while they are executory and unrescinded. Of course no person can be bound by a contract which is a nullity, and no action can be predicated upon it. In reference to the contracts of infants, Kent says, "if their contracts were absolutely void, it would follow as a consequence that the contract could have no effect, and the party contracting with the infant would be equally discharged." (2 *Kent*, 235.) I think it a clear proposition that the contract in question was absolutely void from the beginning, and that no person was capable either of avoiding it or giving it vitality.

It is clear enough, I think, that the plaintiff by no act of his could make the contract good. Without the authority and direction of the court, he had no more power to sell the land than the lunatic himself, and it was not in his power to do that by ratification or adoption which he could not do directly. Were this not so, the lunatic might be divested of his whole real estate without the order or sanction of the court, and for no purpose contemplated by the statute.

The contract being void, no action can be maintained upon it; and the defendants, pretending to enter under it, are trespassers.

The defendants are therefore entitled to judgment upon the demurrer.

[MONROE GENERAL TERM, December 2, 1851. *Welles, Selden* and *Johnson,* Justices.]