ALLEN, by his guardian, STEPHENS, v. BERRYHILL.

## I. Per CURIAM.

1. **Contract: OF INSANE PERSONS.** Where a contract has been entered into under circumstances which would ordinarily make it binding, by a sane person with one who is insane, and such contract has been adopted, and is sought to be enforced by the representatives of the latter, it is no defense to the sane party to show that the other party was *non compos mentis* at the time the contract was made.

> *Argu.* 1. *Infants.* If an infant make a contract with one of full age it may be enforced by the infant against the adult, though not by the adult against the infant.

> *Argu.* 2. *Surety: Coverture.* While as a general rule the discharge of the principal discharges the surety, yet if a person *sui juris* become surety for a married woman, a minor, or other person incapable of contracting, the surety is bound, notwithstanding a successful plea of disability on the part of the principal.

## II. Per COLE, J., dissenting.

2. —— Contracts which are wholly executory, made by a person totally insane, are so far void as that they will not be specifically enforced, even at the suit of the lunatic or his representatives against the sane party.

*Appeal from Johnson District Court.*

SATURDAY, OCTOBER 9.

ACTION in equity. The petition alleges that the plaintiff, Isaac L. Allen, is a person of unsound mind, and has been for more than a year past; that on the fourth day of February, 1867, R. D. Stephens was duly appointed guardian of the person and estate of said lunatic. That on the first day of July, 1866, the said Allen, by R. D. Stephens, his attorney in fact, thereto duly authorized by a written power of attorney made and acknowledged

by the said Allen on the 26th day of June, 1866, entered into a contract in writing with the defendant, Charles H. Berryhill, and one H. D. Downey, by which Allen agreed to convey to said Berryhill and Downey, who purchased the same, certain lands and property in Montana Territory, on payment of two certain promissory notes, amounting to forty-five hundred dollars, executed by said Berryhill and Downey to said Allen, payable in one year with two per cent interest.

A copy of said contract and notes is annexed to the petition. It is also averred that the guardian, since his appointment, has approved of said contract; that said Allen is now an inmate of the State Lunatic Asylum, and hopelessly insane; that Downey is now deceased; no part of said notes has been paid; that said Berryhill and Downey's representatives are entitled to a conveyance of said land, etc., upon the payment of said notes, and that, before such conveyance can be made, the same must be authorized by this court. The wife of Allen, and the representatives of Downey, are made defendants. The prayer of the petition is, for authority to make the conveyance, and for judgment against Berryhill for the amount of the notes, etc.

The defendant Berryhill filed his answer in general denial, and by special defenses; and for eighth count of answer, averred that the contract was still wholly executory, and that Allen was totally insane, in fact, when the same was made, and wholly incapacitated to enter into such contract, or authorize the same to be done, and the same was without binding force or validity as to said Allen, or Stephens, the attorney in fact, or this defendant. And for ninth count, averred that Downey's estate was wholly insolvent, the contract executory and joint, etc., and should not be enforced.

To these two counts of the answer the plaintiff demurred, as not stating facts sufficient to constitute a defense. This demurrer was sustained. The defendant Berryhill appeals.

*Clark & Haddock* for the appellant.

*Edmonds & Ranson* for the appellee.

DILLON, Ch. J. — In substance, this action is one to recover judgment upon the notes made by the defendant to Allen. Incidentally, authority is asked to enable a deed of the property to be made when the purchase-money shall be paid. It is not a case where a specific performance is sought, which rests in the discretion of the court to grant or refuse, according to circumstances.

1. CONTRACTS: of insane person.

The case should be regarded, and will be treated, in settling the law applicable to it, as if it were in form, as it is in substance, an ordinary action upon the notes.

The subject of the contracts of insane persons was recently before the court in the case of *Behrens* v. *McKenzie* (23 Iowa, 333).

The general subject was quite fully examined at that time by the counsel who argued it, and by the court. It was remarked in the opinion delivered therein, that "the decided cases are far from being uniform on the subject of the liability or extent of liability of persons of unsound mind for acts and contracts done and made while in this condition." * * * "The state of the law is such as to allow us to decide this case upon principle."

The conflicting and very unsatisfactory state of the authorities thus referred to is so fully exhibited in the separate opinion of our brother COLE (in whose conclusion, however, the other members of the court cannot

concur), that it is not deemed necessary more particularly to refer to them in the present opinion.

The peculiarity of the case now under consideration consists in the fact that the representative of the party alleged to be insane, and with whom the contract was made, is the party seeking to have it enforced. It is the *sane party* to the contract that makes defense, and the defense is that the other party to the contract was totally insane at the time it was entered into.

No such case, that is, no case where it was the sane party who set up as a defense that his adversary was insane, was referred to by counsel, nor is any such referred to among all those which have been so industriously and carefully collected by Mr. Justice COLE.

This circumstance is regarded as important, and as distinguishing the case from those in which it is the insane party who pleads his incapacity and seeks to prevent the sane party to the contract from enforcing it against him.

It is the opinion of the court, that justice and sound policy concur in requiring it to hold, as it does, that where a contract has been entered into (under circumstances which would ordinarily make it binding) by a sane person with one who is insane, and that contract has been adopted and is sought to be enforced by the representatives of the latter, it is no defense to the sane party merely to show that the other party was *non compos mentis* at the time the contract was made.

There are obvious reasons, founded on the justice and propriety of protecting those whom the visitations of providence have incapacitated from protecting themselves, against contracts which are discovered to be prejudicial to their interests.

Their incapacity to contract is a shield which the law places in their own hands to protect them, not a sword in the hands of others with which to cut down their rights.

If a person who is of unsound mind, or who is afterward shown to have been of unsound mind, shall chance to make a contract which is really advantageous to him, can a satisfactory reason be given why he should not have the right to enforce it?

No such reason occurs to us.

The reason advanced by the appellant is, that in law two minds must concur to make a contract; that where one of the parties is insane there are not two minds capable of contracting; hence there is and can be no contract: and, therefore, no liability by either party to the other thereon.

It cannot be denied that there is to the legal mind, prone to draw and often delighting to indulge in refined and acute distinctions, much that is plausible in the ground here assumed. But, after all, is that ground really tenable?

As applied to this case, the defendant says to the plaintiff: " You cannot recover because you have no contract." The plaintiff replies, " But I have a contract: here it is: it consists in your own notes." Now what does the defendant rejoin: " I admit you have my notes, but, though signed by me, they are not, in legal contemplation, my act, because you had no power to agree to take them."

Is this rejoinder not subtle rather than substantial? In fact, the plaintiff has the promise or contract of the defendant, and, if fairly obtained, it ought to be no defense to a sane defendant, that the plaintiff's mind was not sound at the time the contract was made.

The objection relied on by the defendant is one of the many difficulties which have arisen out of the use of the words " void " and " voidable," and the uncertain extent of meaning attached to them.

The conclusion which we reach derives a very strong support in the analogies of the law. Thus, if an infant

Allen v. Berryhill.

Argu. 1. Infants. make a contract with one of full age, it may, as is well known, be enforced by the infant against the adult, but not by the adult against the infant, if the latter pleads (and the plea is purely personal) his disability.

So also the same doctrine applies to the disability of coverture. And this court has decided, that, while, as a Argu. 2. Surety: general rule, it is true that the discharge of coverture.     a principal releases a surety, yet it holds that "where a person *sui juris* becomes surety for a married woman, a minor, or other person incapable of contracting," the surety is bound, notwithstanding a successful plea of disability on the part of the principal. *Jones* v. *Crosthwaite*, 17 Iowa, 393, 396, and cases cited.

Another illustration : delivery is essential to a deed, and acceptance essential to delivery, and there can be no acceptance without mental assent. This is a general rule of law, and yet a deed made to an infant or to a lunatic, although there be no mental capacity capable of understanding the nature of the instrument, is valid. The law supplies or presumes the requisite assent to an act beneficial to the party ; or it dispenses with it.

So here. Where a person of unsound mind makes a contract which is beneficial to him, the law supplies or presumes the existence of the requisite capacity, or, for his protection, estops the other party to set up and sustain this objection.

The subject might be further elaborated, but it is scarcely needful to do so.

It is the opinion of the majority of the court, that the eighth count of the answer pleaded no sufficient defense, and this conclusion is strengthened by the consideration that it is not alleged therein that the incapacity of Allen was unknown to the defendant at the time the contract was made. If the contract was made by the defendant

with knowledge of Allen's situation, his claim to make this defense is thereby weakened.

The allegation of Downey's insolvency is no defense to the present action. This is so obvious as not to require any special notice.

Affirmed.

COLE, J. (dissenting). — The decision of this case rests, in a large measure, upon the question whether the contracts of a lunatic are absolutely void or only voidable. The language of judges and text-writers upon this question has often been loose and indefinite; and there is an irreconcilable conflict in the authorities upon it. Indeed, the status of lunatics and their rights in court have undergone material changes. Under the ancient common law, lunatics were permitted to show their lunacy in defense of their alleged contracts. 2 Blacks. Com. 291. But later, and in the times of Edward III, and Henry VI, this right was denied, for the alleged reason that a man cannot know, in his sanity, what he did when he was insane. Beverley's Case, 4 Rep. 123; *Stroud* v. *Marshall*, Cro. Eliz. 398; *Cross* v. *Andrews*, id. 622. And in an anonymous case (13 Vesey, 590), it was held that lunacy was no defense. And as late as 1827, Lord TEN TERDEN said, in *Brown* v. *Jodsell*, 3 Car. and P. 30, that no person can be suffered to set up his own lunacy as a defense. But for the last century and more, it has generally been conceded that the lunatic may show his lunacy in defense; and this doctrine obtains and is well settled in this country. *Rice* v. *Peet*, 15 Johns. 503; *Webster* v. *Woodford*, 3 Day, 90; *Lang* v. *Whidden*, 2 N. H. 435; *Mitchell* v. *Kingman*, 5 Pick. 431; *Bensell* v. *Chancellor*, 5 Whar. 371.

I have said that the authorities are in conflict upon the question whether the contracts of a lunatic are void or only voidable. I now proceed to refer to some of the

cases showing the conflict. *Thompson* v *Leach*, 3 Mod. 301 ; S. C., Cath. 425, and also in 2 Salk. 427, it was held that the deed of a man *non compos mentis* was not merely voidable, but was void *ab initio* for want of capacity to bind himself or his property. Lord ELLENBOROUGH said, in *Pitt* v. *Smith*, 3 Camp. Cas. 33, "you have alleged that there was an agreement between the parties; but there was no agreement if the defendant was intoxicated in the manner supposed. He had not an agreeing mind. Intoxication is good evidence upon a plea of *non est factum* to a deed, of *non concessit* to a grant, and of *non assumpsit* to a promise." Judge SWIFT, in his *Digest*, 173, says, an agreement signed by a man in a complete state of intoxication is void. In *Fenton* v. *Holloway*, 1 Starkie, 126 (2 E. C. L. R. 324), it was held, that a contract in writing, signed by the plaintiff when in a state of intoxication, was a nullity and need not be produced. And in 2 Starkie on Ev. (5th Am. ed.) 287, " A defendant may avoid even a deed on *non est factum* pleaded, by evidence that he was made to sign it when he was so drunk that he did not know what he did, in which case it is entirely void. It has, indeed, been said that a court of equity will not relieve in such a case unless the inability were occasioned by the management and contrivance of him who gained the deed. But, at common law, no such distinction seems to obtain ; the law regards the contracts of one who for the time is bereaved of reason, though by his own folly, as void, and does not punish his moral delinquency by subjecting him to obligations to which his assent is essential, when he is incapable of assent." And it was held in *Carter* v. *Beard*, 10 Simons, 7 (16 Eng. Ch.), that a lunatic " was in a situation which incapacitated him from contracting a debt." In *Gore* v. *Gibson*, 13 Mees. and Welsby, 623, which was an action by an indorsee against an indorser of a bill of exchange—de-

fense, complete intoxication, Alderson B. said, " Here the action is necessarily brought upon the contract itself; and when it is shown that the contract by indorsement was made when the defendant was in such a state of drunkenness that he did not know what he was doing, and especially when it appears that the plaintiff knew it, I cannot doubt that the contract is void altogether."

In *Barrett* v. *Buxton* (2 Aiken's Rep. 467), which is a well considered case, PRENTISS, J., in delivering the opinion of the court, evincing much learning and research, after referring to *Rice* v. *Peet*, and *Webster* v. *Woodford*, *supra*, says: " These decisions are founded in the law of nature and of justice, and go upon the plain and true ground, that the contract of a party *non compos mentis*, is absolutely void and not binding upon him. * * * It is an elementary principle of law, that it is of the essence of every contract that the party to be bound should consent to whatever is stipulated, otherwise no obligation is imposed upon him. If he has not the command of his reason, he has not the power to give his assent, and is incapable of entering into a contract to bind himself. Accordingly, *Pothier* holds (vol. 1, c. 1, a. 4, s. 1), that ebriety, when it is such as to take away the use of reason, renders the person who is in that condition while it continues, unable to contract, since it renders him incapable of assent."

And Chief Justice GIBSON, in delivering the opinion of the Supreme Court of Pennsylvania, *In the matter of Desilver* (5 Rawle. 111), says: "At common-law, the feoffment of a madman, as shown by the argument, is only voidable, but his deed is absolutely void; so, that unless we can infer a legislative design to alter the common law in the latter particular, we must hold that his conveyance by bargain and sale is void, and unattended with the consequences attempted to be attributed to it."

And in *Rogers* v. *Walker* (6 Penn. St. 371), the same
eminent judge said: " Since the time of *Thompson* v.
*Leach* (Cath. 435; S. C., 2 Salk. 427), it has been held
that a lunatic's conveyance, executed by sealing and de-
livery of it only, is absolutely void as to third parties;
and why not as to the grantor?"   And the Court of Ap-
peals of Kentucky, in *Pearl* v. *McDowell* (3 J. J. Marsh.
658), after quoting 3d vol. Bac. Abr. 539, that the con-
tracts of lunatics and idiots, after office found and the
party legally committed, are void, say:   " A lunatic has
no capacity to contract so long as his lunacy continues."

It is said by Dart, in his work on Vendor and Pur-
chaser, marg. p. 4:   " It has, however, been held that
a bargain and sale, lease and release, or other inno-
cent conveyance by a lunatic, is absolutely void (2 Sug.
on Pow., 7th ed. 179)."   See also note 1 at bottom of p.
4, *et seq.;* and also pp. 45, 491 to 495.   Mr. Parsons
says: " They who have no mind cannot agree in mind
with another; and as this is the essence of a contract,
they cannot enter into a contract.   But there is more
difficulty when we consider the case of those who are of
unsound mind, partially and temporarily, and inquire how
the question may be affected by the cause of this unsound-
ness."   1 Pars. on Contr. 310.   See also Story on
Contr. §§ 36 and 42.   And, in a recent work on Infancy
and Coverture, this language is used:   " It is regarded
equally to the security of an infant, and more to his ad-
vantage, that by considering his acts voidable, we should
give him the privilege of avoiding, which also implies
that of affirming them, than that, by considering them
void, we should lay him under the *disability* of acting at
all, and place him on a level with *idiots and lunatics.*
Tyler on In. and Cov. 49.   See also pages 59 and 60.

It was also *held* in *Jenners* v. *Howard* (6 Blackf. 24),
that " if the mind be incapable of assenting, the law pro-

nounces the contract void. Drunkenness of itself merely, unless fraud be practiced, will not avoid a contract; but if the party be in such a state of intoxication that he is for the time deprived of reason, the contract is void." See also *Corbit* v. *Smith* 7 Iowa, 60; *Prentice* v. *Achorn*, 2 Paige's Ch. 30; Willard's Eq. 267, and cases cited; Chitty on Cont. 150–153; Comyn. on Cont. 2; Edwards on Bills, 63.

On the other hand, Mr. Blackstone says: "Idiots and persons of non-sane memory, infants and persons under duress are not totally disabled either to convey or purchase, but *sub modo* only. For their conveyances and purchases are voidable, but not actually void." Black. Com. book 2, p. 291. And Mr. Metcalf, in his recently published work on Contracts, says (p. 80): "By the common law, a deed of land made by a person *non compos*, is voidable only, but not void; and therefore the deed of such a person conveys a seisin." Mr. Parsons says: "Before office found, the acts of a lunatic are said to be voidable only; afterward, void. But we should have some doubt whether this distinction would be enforced so far as to say that the contract could not be ratified and confirmed by him after his sanity was restored." Pars. on Notes and Bills, 151. Mr. Hilliard says: "The deed of a *non compos* is voidable by himself, his heirs or devisees. If he is under guardianship, it is absolutely void." Hill on Real Prop. (2d ed.) p. 408, § 16. But the same author says, in the same work (p. 271, § 46): "It was the ancient doctrine, that an idiot or lunatic could not avoid his deed. But it is now settled, that the deed of an idiot is void, and also that of a lunatic, unless he assent to it on recovering his reason. And such deeds may be avoided by the heirs of the parties. But the feoffment of an idiot or lunatic is voidable, not void." See also Edwards on Bills, 63, 64, 67, 68, and cases cited.

Allen v. Berryhill.

*Wait* v. *Maxwell* (5 Pick. 217), holds that a deed by a person *non compos mentis* who is under guardianship is absolutely void; but if not under guardianship, then it conveys a seisin and is voidable only. So in *Harbison* v. *Lemon* (3 Blackf. 51), it is said: "The true principle probably is, that a deed may be avoided either at law or in equity, if, at the time of its execution, the obligor was so destitute of understanding as not to know what he was doing; whether the incapacity be occasioned by idiocy, lunacy, or drunkenness." And in *Allis* v. *Billings* (6 Metc. S. C., 2 Cush. 19), it is expressly and directly held that the deed of a lunatic is only voidable and not void. To the same effect also is *Jackson* v. *Gumaer*, (2 Cow. 568), that the contracts of a lunatic before office found are voidable, not void. So in *Crouse* v. *Holman* (19 Ind. 30), it is said: "A conveyance executed by a person *non compos mentis*, and not under guardianship, is not absolutely void, but voidable only." And it is *held* in *Ingraham* v. *Baldwin* (5 Seld. [9 N. Y.] 45), that a mortgage executed by a lunatic is voidable only, not void; it is at most voidable at the election of the lunatic or those claiming some interest under him. See also *Arnold* v. *Richmond Iron Works*, 1 Gray, 434; *Beeson* v. *Carleton*, 13 Ind. 354.

Lord MANSFIELD, in delivering the opinion of the court in *Lysech* v. *Parsons* (3 Burrows, 1794 [*i. e.*] 1805), says: "Littleton, who writes with great accuracy and precision, puts them both (feoffment and deed) upon the same foot. He says: 'If, before the age of twenty-one, any *deed* or *feoffment*, grant, release, confirmation, obligation or *other* writing be made by any of them, etc., all serve for nothing *and may be avoided.*" But Lord MANSFIELD further says, in the same opinion, that the comparison between an *infant* and a man *non compos mentis* is not just. While, in *Thompson* v. *Leach* (3 Mod. 310), it is said that

deeds of infants and lunatics are parallel both in law and reason.

Again, it is said in *Fitzhugh* v. *Wilcox* (12 Barb. S. C. 235), that "the inquisition found and the decree thereon are notice to all the world, and operate as a judicial sentence upon the question. While *In re Gangwere* (14 Penn. St. 417), it is held that the inquisition is only *prima facia* evidence of lunacy, and even the petitioner for it may dispute the fact. So also in *Hutchinson* v. *Sandt*, 4 Rawle, 234. Very many other cases which have been examined by us might be quoted, showing further the same conflict. But it is doubtless true that in very many of the cases cited, and others which have passed under our observation, the word 'void' is used in the sense of 'voidable' and *e converso*. Although such is not the sense applied to it in many cases, as will be seen by reference to *Thompson* v. *Leach*, *Gore* v. *Gibson*, *Barrett* v. *Buxton*, *In re Desilver*, *Rogers* v. *Walker*, *Allis* v. *Billings*, *Ingraham* v. *Baldwin*, and other cases, *supra*.

There are many cases in the books which are made to rest upon their special circumstances, rather than upon the question whether the contracts of lunatics are void or only voidable. These may serve somewhat to illustrate the true principle underlying the contracts of persons *non compos mentis*. In the case of *Baxter* v. *Earl of Portsmouth* (13 E. C. L. R. 79), the defendant, after he had been found a lunatic under a commission of lunacy, employed coachmakers, who were ignorant of such commission, to manufacture and keep for his use certain carriages. The contract was performed by the plaintiffs, and the defendant had the use of the carriages pursuant to it; and it was shown that the carriages and the use defendant had of them were proper and suitable to his rank and position in life. ABBOTT, C. J.: "I am of opinion, that on this evidence the plaintiffs are entitled to

Allen v. Berryhill.

recover a reasonable sum for the hire of their carriages, not on the ground of a contract, but for the actual use of the carriages; for that is very different from being bound by contract in the ordinary meaning of the term. It has been doubted whether it is competent to a person to set up his own incompetency to a contract; but going upon an executed contract is very different from attempting to bind a lunatic on a mere contract on which nothing has been done." On a motion for a rule *nisi* for a new trial, argued by Lord Brougham, the case was again elaborately considered and the same conclusion reached. S. C., 16 E. C. L. R. 304. See also *Hallett* v. *Oaks*, 1 Cush. 296; *La Rue* v. *Gallison*, 4 Barr. 375. The same ruling in substance was made in *Wentworth* v. *Tubb* (1 Young & Collyer, 171), by holding that, in case of necessaries supplied to a lunatic, the law raises a contract by implication on the part of a lunatic, and a court of equity will order a debt paid out of his assets when he is deceased. So, a husband is liable for necessaries supplied to his wife during the period of his lunacy. *Read* v. *Legard*, 6 Exch. 657. See also *Alexander* v. *Miller*, 4 Harris (Pa.), 213.

But in the case of *Dane* v. *Lady Kirkwall* (8 Car. and P. 687; S. C., 34 E. C. L. R. 958), the court seems to have gone a step further, and to have rested its judgment upon a more doubtful basis. The action was for the rent of a house under a written lease; the defense was insanity, and that the house was not a necessary, the defendant having another house in Albany street. PATTERSON, J., in summing up the case to the jury, said, *inter alia.* It is not sufficient that it be shown that Lady Kirkwall was of unsound mind, but you must be satisfied that the plaintiff knew it and took advantage of it. * * * * I think that here it appears, from plaintiff's own witnesses, that Lady Kirkwall was of unsound mind and

that the house in Albany street was clearly sufficient for her: we therefore come to the main point, whether the plaintiff knew her to be of unsound mind and took advantage of it." There was a verdict and judgment for defendant; and a rule for a new trial was refused.

The case of *Moulton* v. *Camroux* (2 Exch. 487) was an action by the heirs of a lunatic to recover money paid by him for the purchase of certain annuities. The lunatic was of apparently sound mind at the time of the purchase, and was not known by the society, of which he made the purchase, to be otherwise. " POLLOCK, C. B. We are not disposed to lay down so general a proposition as that all executed contracts *bona fide* entered into must be taken as valid, though one of the parties be of unsound mind; we think, however, that we may safely conclude, that when a person apparently of sound mind, and not known to be otherwise, enters into a contract for the purchase of property which is fair and *bona fide*, and which is executed and completed, and the property, the subject-matter of the contract, has been paid for and fully enjoyed, and cannot be restored so as to put the parties in *statu quo*, such contract cannot afterward be set aside either by the alleged lunatic or those who represent him." The same case, on error, is reported in 4 Exch. 16, and affirms the same doctrine. To the same effect is *Neill* v. *Morley*, 9 Vesey, 478. The same doctrine, substantially, underlies the case of *Beals* v. *See* (10 Barr. 56), where the court held that an executed contract by a merchant for the purchase of goods cannot be avoided by proof of insanity at the time of the purchase, unless there has been a fraud committed on him by the vendor, or he has knowledge of his condition, and in delivering the opinion of the court in this case GIBSON, C. J., says: " The prayers for direction seem to have been founded on a notion, that, independent of every other consideration, a *non compos*

*mentis* has not capacity either to make or to execute a contract under any circumstances — a position altogether untenable."

But somewhat at variance with the doctrine of these last cases, is the ruling in the case of *Seaver* v. *Phelps* (11 Pick. 304), which was an action in trover for a promissory note pledged by the plaintiff, while insane, to the defendant. In delivering the opinion, WILDE, J., *holds*, that the contracts of lunatics are not generally absolutely void, but only voidable; that a lunatic may avoid his contract although the other party was not apprised of his lunacy, or had no reason to suspect it from plaintiff's conduct or any other source, and did not overreach him or practice fraud or unfairness; that the distinction between contracts executed and executory was not material; that the case of *Brown* v. *Jodull, supra,* was founded on the old rule, that no one could plead his own disability, now modified and denied by *Mitchell* v. *Kingman,* 5 Pick. 431.

This case recognizes and re-affirms two points which seem to be the settled doctrine of Massachusetts, to wit: that the contracts of lunatics are voidable only and not void, and that a lunatic may plead his own disability. But when he treats as immaterial the questions of fraud or unfairness; or advantage of the known lunacy; or the distinction between executed and executory contracts, it goes beyond any previously settled rule of the courts of that State, or perhaps of any other.

The Supreme Court of Connecticut seems, quite indirectly however, to recognize the doctrine that the contract of a lunatic is void. In *Grant* v. *Thompson* (4 Conn. 203), which was an action on a promissory note, the defense was insanity. The only question in the case arose upon admitting and excluding evidence, and the court says: "This evidence, it is true, would not ratify or confirm a contract *originally void,* but it had a tendency to

prove the recognition of it, and that the defendant was of sound mind when he made it."

In direct conflict with the case of *Seaver* v. *Phelps*, *supra*, upon the question of the material distinction between contracts executed and executory, and also as to fairness, knowledge of lunacy, etc., are the cases of *Beavan* v. *McDonnell*, 9 Exch. 309, and *Moulton* v. *Camroux*, 4 id. 16. In the latter case, PATTERSON, J., says: " This special verdict hardly shows that the ancestor was so lunatic as not to know what he was about when he purchased the annuities : but even if it did, the modern cases show that when that state of mind was unknown to the other contracting party, and no advantage was taken of the lunatic, the defense cannot prevail, especially when the contract is not merely executory, but executed in the whole or in part, and the parties cannot be restored altogether to their original position." In full accord with this doctrine is the case of *Carr.* v. *Holliday*, 5 Iredell's Eq. 167. But the case of *Sentance* v. *Poole* (3 Car. and P. 1 ; S. C., 14 E. C. L. R. 179) holds that a negotiable note, in an unusual form, made by a lunatic, is bad, even in the hands of an indorsee. And *Gibson* v. *Soper* (6 Gray 279) holds that a lunatic may avoid his deed and recover the land without restoring the consideration received. While *Carr* v. *Holliday* (5 Ired. Eq. 167), *supra*, holds that a fair trade will not be rescinded, even at the instance of the lunatic, when the defendant cannot be put in *statu quo.*

I have examined with much care and interest a large number of cases besides the foregoing, but it is hardly necessary to quote further, or to state the substance of the cases. They only illustrate more in detail the want of harmony in the decisions, and the absence of any well-settled principle upon which they are rested. I merely add a few citations, which may serve as aids to those who

may wish to examine the various phases in which the question has been presented, and the different shades of opinion they have developed. *Turner* v. *Myers*, 1 Hagg. C. R. 414; *Samuel* v. *Marshall*, 3 Leigh, 567; *Prentice* v. *Achorn*, 2 Paige's Ch. 30 ; *Fitzgerald* v. *Reed*, 9 Sm. and Marsh, 102; *Somes* v. *Skinner*, 16 Mass. 348; *Hallett* v. *Oaks*, 1 Cush. 296; *Sims* v. *McClure*, 8 Rich. Ch. 288, and cases cited; *Hutchinson* v. *Santd*, 4 Rawle, 234, *Leonard* v. *Leonard*, 14 Pick. 280; *Doe ex dem* v. *Abernethy*, 7 Blackf. 442; *Oliver* v. *Houdlett*, 13 Mass. 239 : *Lilly* v. *Waggoner*, 27 Ill. 395. See, also, Smith on Contr. (4th Am. ed.) 328 and 335; Chitty on Contr. 150–153; Story on Contr. §§ 52 and 58 ; Story's Eq. Jur. §§ 227 to 237; *Price* v. *Benington*, 7 Eng. L. and Eq. Rep. 254.

I now turn my attention to what seems to me to be the true principle upon which the rights of lunatics, and of parties contracting with them must rest. And since several of the cases cited, as did much of the arguments at bar, claim or assume the analogy between contracts of lunatics and infants, I will first examine the basis of the claimed analogy.

Infants have not a mature capacity ; and while it is true that the degree or measure of their capacity in fact is widely different, extending from the faintest traces of reason manifested by an infant of very tender years, up to the almost or quite mature judgment of manhood, yet the common law, by its universal rule, holds all to be alike infants, who are under the age of twenty-one years, and throws the same mantle of protection over them, regardless of the measure of their capacity. The law recognizes them all as having *some* capacity. The precise basis upon which the law rests its guardianship or protection of infants or minors may not be very well settled or defined in the books. But that they are not bound in law by any contract they may make, if they

choose to avoid it, is now well settled. It is true, the opinions of courts and the text-books of elementary writers are full of expressions to the effect that infants are bound by their contracts for necessaries, and the like. But strictly speaking, these expressions are not true,— they are not the law. To illustrate : If an infant or minor shall make a contract for the purchase of a coat necessary and suitable for him, and agree to pay fifteen dollars for it, while in fact it is only worth ten dollars, he is not bound by *his contract*. He is, when he chooses to repudiate, only bound by the contract which the law raises or implies, to wit : to pay the fair value of the necessary furnished ; and in an action by the merchant upon the contract thus repudiated by the infant, for the agreed price of the coat, he could not recover the contract price, nor *upon the contract*, but only upon the implied promise or contract which the law made. And in every case of suit against an infant resisting payment for necessaries furnished, it devolves upon the plaintiff to prove the fact that the articles were necessaries and their fair value ; the proof of a contract with the infant to pay a certain price is not sufficient; he must prove the fair value, although it is possible the contract might be some evidence of that value. So that, strictly speaking, *infants* are *never bound* by *their contracts*, not even for necessaries.

But since all infants do in fact (or are in law, presumed to) have *some capacity*, the law holds them capable of contracting. They are held to have sufficient capacity to give the mental assent requisite to a valid contract. But since they are of immature judgment and limited capacity whereby they may be easily imposed upon and defrauded, the law, for their protection, allows them to plead their infancy in avoidance of their contracts, if they choose so to do. Doubtless, the true ground upon which

Allen v. Berryhill.

they are allowed thus to avoid their contracts is, that they have been defrauded; and since their limited capacity might render it often impossible for them to show the fraud, or unfair advantage, the law only requires them to show their infancy and unwillingness to be bound by the contract, and from these two facts presumes or infers the fraud and absolves the infant from the obligations of his contract. And, of course, the other party to the contract must remain bound by it unless the infant chooses to avoid it. Nothing can be clearer than this; and hence it is uniformly held that the incapacity of an infant is available only to the infant, and not to the other party.

Now it seems to me that the analogy between the contracts of infants, having *some* capacity, and of lunatics, having *no* capacity, cannot be very strong. Infants are regarded by the law as having capacity sufficient to contract — that is, to conceive and manifest the assent essential to constitute an agreement. But a lunatic, having no capacity whatever — that is, no mind capable of conceiving or manifesting an assent — it is evident that he cannot make a contract; for the very elemental idea of a contract is the mutual assent of two or more persons. As it takes at least two persons to make a contract, and their assent must be mutual or reciprocal, it must follow that if either one does not possess the capacity to yield his or reciprocate the assent of the other, there can be no contract. If no contract, then neither party is bound, and of course the want of obligation is as available to the one party as to the other. The clear distinction and want of analogy, then, between the contracts of an infant and of a lunatic having no capacity is manifest at the outset; an infant binds himself, subject to his right, under the charity and guardianship of the law, to avoid it, and the contract binds the other party absolutely; while a lunatic,

having no capacity, does not bind himself at all, and, per consequence, fails to bind the other party.

Nor is the analogy by any means very striking between the contracts of infants and lunatics having some capacity — partial lunatics. As regards infants, we have seen that they may avoid their contracts at their mere pleasure, and without showing any other fact than their infancy. But a lunatic, having some capacity or lucid intervals, must show, in addition to the fact of lunacy, the further fact that the other party took advantage of it to his prejudice. In the case of infants, the law presumes this advantage and prejudice, and does not require proof to show it, nor permit proof to rebut it.

But in some particulars the analogy is very apparent. An infant is bound to pay the fair value of necessaries furnished him; so is a lunatic. An infant may refuse to perform (or avoid) his contract; so may a lunatic, etc., etc.

The analogy between infants and lunatics is not sufficiently striking to justify the application of the law respecting infants to controversies involving the rights of lunatics. Let us then turn to the facts of this case. The count of the answer demurred to, avers "that at the time the contract was attempted to be made, Allen was totally insane, in fact, and incapacitated to enter into such contract or authorize the same to be made." If he was totally insane, of course he could not give that assent which is essential to a valid and binding agreement. He could not bind himself, nor could he bind the other party to him. Neither party, therefore, was bound; and although there was in form a contract, it was wanting in the vital element of mutual or reciprocal assent. And the contract being wholly executory, neither party can be required to perform. It must be noticed that we rest this decision upon the two facts, that Allen was " *totally*

*insane in fact,*" and that the contract is *wholly executory*
on both sides.   If there had been *some capacity*, how-
ever limited, the contract would not have been, of itself,
entirely void or no contract.   So, if the contract had
been executed, in whole or in part, other questions would
be involved in its determination, which might materially
affect the result.

Where a contract is wholly executory, and neither
party has parted with any thing of value, but simply a
promise has been given for a supposed promise, there is
no equity or rule of law which can demand its enforce-
ment.   The lunatic cannot demand it, because he has
given nothing whatever for the promise he seeks to
enforce—not even his own promise ; for by reason of his
insanity his promise was no promise.   The other party
cannot demand it, because the lunatic, in the eyes of law,
has made no promise to be enforced.

But if the contract had been fair, made in good faith,
and fully executed, other considerations than that of mere
capacity, intervene and affect the rights of the parties.
The contract being fair and free from fraud, there is no
basis for an action; for the element of *damage*, which is
necessary to sustain any action, is wanting.   The question
of the knowledge of the party dealing with the lunatic,
of his condition, it seems to me can only be material as
a circumstance bearing upon the question of fairness or
good faith of the transaction ; although it is doubtless
true that a court would much more readily set aside a
transaction with a lunatic, made by a party knowing him
to be such, than if he was honestly supposed to be sane
and capable ; and this, because of the ground it would
afford for basing the conclusion of fraud or unfairness in
the transaction itself.

And in every case of contract with a lunatic, which
has been executed in whole or in part, the fact that the

Allen v. Berryhill.

parties can or cannot be placed in *statu quo* will have an important bearing in determining whether such contract shall stand. If the parties can be placed in *statu quo*, a court may very properly hold the contract void, and restore the parties to their original rights and property; because thereby no injustice is or can be done to either, and the possibility of prejudice under the contract is avoided. And where the party dealing with the lunatic had knowledge of his condition at the time of the contract, and the parties can be placed in *statu quo*, no court should hesitate to do so at the suit of the lunatic.

When the parties cannot be placed in *statu quo*, and the contract is fair, was made in good faith, and without knowledge of the lunacy, it will not be set aside, even at the suit of the lunatic. And this, not because the contract was valid or binding, but because an innocent party, one entirely without fault or negligence, might, and in the eyes of the law would, be prejudiced by setting it aside. Both parties are faultless, and therefore stand equal before the law and in the forum of conscience. The law will not lend its active interposition to effectuate a wrong or prejudice to either; it will suffer the misfortune to remain where nature has cast it. But if there was any unfairness in the contract, or if the party dealing with the lunatic had knowledge of his lunacy, and obtained even a slight advantage by it, this would destroy the basis of equality, and justify a court in setting aside the contract, notwithstanding the parties could not be placed in *statu quo*.

Nor, in my view, based, as I think, upon principle, can it be material whether the lunatic has been found to be such under a judicial commission or not, except so far as such finding may tend to establish the fact of lunacy, or the knowledge of it by the party contracting with him. And hence I do not approve or follow those cases which

hold that the contracts of lunatics are void or voidable, as they have or have not been found lunatics under a commission. See *Pearl* v. *McDowell*, 3 J. J. Marsh. 658; *Wail* v. *Maxwell*, 5 Pick. 217; *Jackson* v. *Gumaer*, 2 Cow. 578, and other cases, *supra*. The question upon which the rights of the parties turn is one of fact, to wit: Was the party a lunatic? If he was in fact a lunatic, totally insane, then he was incapable of making a contract, being without a mind with which to conceive or manifest the requisite assent; and this, too, without regard to the fact whether he had been found a lunatic under a commission or not. The finding under a commission of lunacy, is only evidence *prima facie* of the fact of lunacy during the time specified in the finding. It has been uniformly so held, unless the case of *Fitzhugh* v. *Wilcox* (12 Barb. 235, *supra*), be an exception; and this point does not seem to have been directly adjudicated in that case. See *Lilly* v. *Waggoner*, 27 Ill. 395.

And it also appears to me that the doctrine of the Supreme Court of Pennsylvania upon the question whether the deed of a lunatic is void or only voidable, is better founded upon both principle and logic than the doctrine of the Supreme Court of Massachusetts. Both courts agree that a *feoffment* by a lunatic is voidable only, and not void. And from this basis the Massachusetts courts conclude and hold that the *deed* of a lunatic is only voidable and not void; while the Pennsylvania courts hold that the lunatic's deed is absolutely void, and not voidable merely. This latter view finds its support in the fact that a feoffment was always accompanied by livery of seisin. The livery of seisin was performed by the feoffor and feoffee going upon the land, and the latter receiving it from the former. This ceremony or act transferred the *actual seisin* or possession to the transferee or feoffee, and whether the feoffor had the mental capacity to make

a valid contract or not was immaterial, since the actual seisin was given by the manual act or livery. The actual seisin being transferred, it could not, of course, be void, but, in order to regain the possession, the act must be avoided. Under our law, there is no such formal and actual livery of seisin, but the seisin passes, if at all, by the deed itself; and hence, if there is no *deed*, by reason of the want of capacity to make it, no seisin or title passes, and therefore there is nothing to avoid — it is void of itself.

If the contract of a lunatic is void, as I hold it is, then it is clear that it could not be ratified by his committee, since a void act is no act, and hence incapable of being ratified. But aside from this, it has been held by the Supreme Court of Massachusetts, where the contracts of lunatics are held to be voidable only, that it was not competent for the guardian of a lunatic to avoid the lunatic's contracts. *Oliver* v. *Houdlett*, 13 Mass. 239. And it has also been held that a guardian or committee could not by any act of his make the contract of a lunatic good. *Fitzhugh* v. *Wilcox*, 12 Barb. 235, *supra*. The averment of the plaintiff in his petition, that he, as guardian, has approved of said contract, since his appointment, cannot, therefore, help the plaintiff's case.

There is still another view of this case, as presented by the record, which leads to the same result, and perhaps by a more direct and satisfactory line of reasoning. It appears, from the petition and exhibits, that the contract of sale upon which the suit is brought was made by R. D. Stephens, as attorney in fact for Allen, the lunatic, under a power of attorney executed at or about the time the contract was made, and while he is averred to have been totally insane. Now, it is very well settled that the power of attorney of an infant or lunatic is wholly void. LANE. C. J., in delivering the opinion of the Supreme Court of Ohio in the case of *Lawrence* v. *McArtee* (10

Ohio, 37), says: "it has been held in many cases, and, as far as I can learn, without a dissenting opinion or a contradictory authority, that letters of attorney (of infants) conveying no present interest, are absolutely null." And PARKE, B., in *Sarbuck* v. *Bispham* (2 Mees. and Wels. 6), says, "a lunatic is not competent to appoint an agent." And it is also said, in *Pyle* v. *Cravens* (4 Litt. [Ky.] 17), that a warrant or power of attorney given by an infant is wholly and absolutely void. It must follow, therefore, that the attorney in fact who made the contract sued upon had no authority to make it; and it appears from the pleadings that Allen continued a lunatic up to the bringing of this suit, and of course could not ratify the act of his agent or attorney in fact; and, as we have seen, it is not competent for a guardian or committee of a lunatic to either ratify or avoid his contracts. The supposed contract, therefore, was not the contract of Allen, for the want of authority on the part of his agent or attorney in fact to make it; and this, regardless of the question whether the contracts of lunatics are merely voidable or are wholly void.

It is averred by an amended petition that the contract of sale sued upon was made pursuant to a previous agreement entered into at the time of, and in part consideration of, the purchase of the identical property in controversy by Allen of the defendant Berryhill. It is perhaps unnecessary for me to remark that my opinion of this case leaves the rights of the parties upon that hypothesis of facts wholly untouched.

What I hold is, that contracts which are wholly executory, made by persons totally insane, are so far void as that they will not be specifically enforced, even at the suit of the lunatic against the sane party. I think the judgment should be *reversed*, but the majority think otherwise, and order the judgment 　　　Affirmed.