## LUCY W. ELSTON V. THOMAS JASPER.

1. PLEADING—INSANITY—RATIFICATION OF CONTRACT—EVIDENCE.
   When insanity is specially pleaded as a defense to avoid a sale and
   a ratification of a contract after the removal of the disability is
   relied on, such ratification must be pleaded before the plaintiff will
   be permitted to introduce evidence to establish it.

2. INSANE PERSON—DEED.—The deed of an insane person is not void,
   but voidable only, but such person, whilst actually under legal and
   subsisting guardianship, and in support of the guardian's authority,
   is conclusively presumed incompetent to contract, and his deed, as
   against his guardian, is absolutely void.

3. SAME.—If, however, as an actual fact, the guardianship had been
   practically abandoned at the time of the sale, and the person who
   had been insane was, when the deed was executed, of sound mind,
   the contract, if fair, will be enforced.

4. BURDEN OF PROOF—INSANITY—DEED.—The burden of proving the
   restoration to reason and the termination or practical abandonment
   of the guardianship of one insane, is upon him who seeks the en-
   forcement of a contract against him who pleads insanity.

APPEAL from Collin.  Tried below before the Hon. W. A.
Andrews.

*Joseph Bledsoe,* for appellant, in support of the assignment
of errors, to the effect that the court erred in permitting the
plaintiff to prove that he paid any consideration on the bond
sued on, cited Jones *v.* Halliday, 11 Tex., 415; Van Norman
*v.* Wheeler, 13 Id., 318.

On the proposition that a contract with one for whom a
guardian had been appointed as an insane person, and whose
letters were unrevoked, was void, he cited Story on Sales,
sec. 30; 2 Greenl. Ev., secs. 367–70; Mitchell *v.* Kingman,
5 Pick., 431; 11 Id., 204; Story on Cont., secs. 23–5.

*Walton, Green & Hill,* for appellee.  There need be no rev-
ocation of the letters of guardianship of a lunatic; the resto-
ration of the mind revokes the letters.  (Paschal's Dig., art.
3919.)

It was not needful to show that consideration passed from

appellee to Dill, unless the suit in the name of appellee instead of Dill worked some hurt to appellant, or deprived her of some right. This is not pretended to be true. (Paschal's Dig., art. 5087.)

GOULD, ASSOCIATE JUSTICE.—This suit was brought by appellee Jasper to enforce specific performance of a title-bond, made July 18, 1856, by the appellant Lucy Elston, then Lucy Corner, to one Reuben Dill, of which bond the petition alleged the plaintiff Jasper to be the legal and equitable holder and owner, reference being made to a written assignment. The bond recites that, in consideration of five hundred dollars to her paid, the said Lucy sold to Reuben Dill the undivided half of two hundred and forty-five acres of land, identified by description, and binds her to make to Dill a sufficient deed to the one-half of said tract, so soon as the same was divided. The assignment from Dill to Jasper does not recite any consideration, and is without date.

The defense set up was that at the time of the execution of said bond defendant was of unsound mind; that she had been so adjudged by the County Court of Collin county, and that Wm. McKinney was at the time of, and prior and subsequent to, the execution of said bond the duly appointed guardian of defendant. The plaintiff went to trial without any averment that the defendant had ratified or confirmed her bond after she had been restored to her mental powers; but on the trial was allowed, over the objection of defendant, to introduce evidence for the purpose of establishing a ratification, and the court in its charge gave the plaintiff the benefit of acts of the defendant and her husband, claimed to amount to a ratification, just as if the pleadings of the plaintiff had set it up as a response to that part of the answer alleging the mental unsoundness, as in itself a defense.

Where insanity or infancy is specially pleaded as a defense, a reply that the defendant had ratified her deed or contract after the recovery of reason or coming of age, is in the nature

of new matter, confessing and avoiding the defense, and as such it devolves on the plaintiff to allege it, if he would avail himself of it on the trial. (1 Chitty's Pl., 581, 623; Cohen *v.* Armstrong, 1 Tenn., 648; 1 Maul. & Selw., 724–5; 3 Maul. & Selw., 481; see Hollingsworth *v.* Holshousen, 17 Tex., 46.) The authorities cited are mostly illustrations of the mode of avoiding the defense of infancy; but the reason seems to apply equally to cases of insanity.

This point is presented both by bill of exceptions and the assignment of errors; and the error of the court entitles defendant to a reversal of the case.

It is proper, however, to pass upon the legal effect of the alleged guardianship, as it is a question which will recur on another trial, and this renders it necessary to state a part of the evidence.

The plaintiff introduced the bond and assignment, the record showing partition of the 245-acre tract between defendant and her children in April, 1857; also the depositions of Dill, to the effect that he had sold to the plaintiff Jasper the land named in the bond, and other lands in Texas, for two hundred acres of land in Illinois, the bond being transferred without recourse on him.

The defendant read in evidence the following extracts from the minutes of the County Court of Collin county: "On this day came the sheriff of Collin county and returned the summons and verdict of the jury upon the insanity of Lucy W. Corner, the widow of A. J. Corner, deceased, which is received by the court and ordered to be filed." Also, "Ordered and adjudged by the court that W. C. McKinney, administrator of the estate of A. J. Corner, deceased, proceed to sell at private sale three work oxen and five log chains, one prairie plow; also that he take charge of the person of Lucy W. Corner, widow of said deceased and a lunatic." It appears from the evidence of McKinney, that the jury to inquire into the sanity of defendant was impaneled on his petition, and that the order appointing him guardian was made in

April, 1855; that the defendant became insane shortly after the death of her husband; that she was pronounced of unsound mind by the jury; that he received letters of guardianship, and took and kept charge of her during the year 1855, during which time she manifested an inclination to take life, and had to be kept confined. About Christmas of that year she commenced to improve, and continued to get better until about the middle of March, 1856, by which time she had ceased to have any desire to take life, and thinking it would improve her condition, witness allowed her to return to her own home, but continued to furnish her provisions. This witness says that he considered her still under his guardianship at the time of the alleged sale, and until her marriage to Thomas Elston in September, 1856, after which he thought that he was discharged by that act, and paid no more attention to her; that he had never surrendered or resigned his letters of guardianship, nor had they been revoked. There was much conflicting evidence as to the actual condition of defendant at the time of the trade. There is, however, no evidence that she was insane after the year 1855.

It was proved by the record that at the August Term, 1856, of the County Court of Collin county, an order was made appointing her guardian of the person and estate of her minor children, but it does not appear that she ever qualified. In October, 1870, she brought trespass to try title in the name of herself and children, against Dill, for the two hundred and forty-five acres, of which it appears that Dill took or received possession shortly after her marriage in September, 1856. This suit was still pending in 1867, when Dill removed from the State, and the defendant having resumed possession, the suit was dismissed. Further than the fact that the amount paid defendant by Dill was in horses, and that there is some confusion in the evidence as to whether these horses were received by defendant before her marriage, or were only received for her husband after marriage it is not material to detail the other testimony.

The court refused to charge that the proceedings in the guardianship were, until revoked, conclusive against all persons subsequently dealing with the lunatic, but charged that the guardianship would be terminated by her restoration to sound mind, and submitted to the jury, as a question of fact, the mental soundness of defendant at the time of the trade. It may be remarked that there is some confusion in the record as to the charges given, and that conflicting charges, apparently given, lead us to doubt whether the jury may not have been misled thereby.

The deed of an insane person is not void, but only voidable. (Hovey *v.* Hobson, 53 Me., 453 ; Wait *v.* Maxwell, 5 Pick., 218 ; Fitzhugh *v.* Wilcox, 12 Barb., 237 ; 1 Parsons on Contract, 384 ; Breckenridge's Heirs *v.* Ormsby, 1 J. J. Marshall, 236.)

But such a person, whilst actually under legal and subsisting guardianship, and in support of the guardian's authority, is conclusively presumed incompetent to contract, and his deed, as against his guardian, is absolutely void. (Wait *v.* Maxwell, *supra;* Leonard *v.* Leonard, 14 Pick., 280 ; Fitzhugh *v.* Wilcox, 12 Barb., 235 ; Pearl *v.* McDowell, 3 J. J. Marshall, 658.)

The statute in force in 1856 authorized the chief justice, on information in writing that a person in his county was a lunatic, to cause such person to be brought before him at some regular term, and summon and swear a jury to inquire whether such person is of sound mind or not, and, upon their verdict, to appoint a guardian of the person and estate of such lunatic. (Paschal's Dig., art. 3918.) The next article reads: "Guardians of idiots, lunatics, and persons *non compos mentis,* shall continue in office, unless sooner discharged according to law, until their ward shall be restored to sound mind or shall die." (Paschal's Dig., art. 3919.) Undoubtedly, the proper and safer course is to have the ward's restoration judicially ascertained, and thus fix the termination of the guardianship.

(Schouler on Dom. Rel., 424; Hovey *v.* Harman, 49 Me., 269; Kimball *v.* Fiske, 39 N. H., 110.)

But where there is no question as to the protection of a guardian in the assertion of his authority, where, as in this case, the guardianship has practically terminated, without judicial action and the restoration of the lunatic, though indefinite as to the time of its completion, is an ultimate fact conceded and acted on, it would be going too far to hold, as a matter of law, that there was still a subsisting guardianship, and that contracts made under such circumstances are null and void.   No better illustration of the evils of such a doctrine need be asked than is afforded by the present case, in which it would lead to the holding null and void the contracts of defendant up to the time of trial.   If, as a matter of fact, the guardianship had been practically abandoned at the time of the sale, and the jury so find under proper instructions, and if the evidence established the fact that the defendant was then of sound mind, it is believed that a fair contract made by her should be enforced.   The burden of proving the termination of the guardianship and the actual restoration of the lunatic would be on the party asserting the contract.

In regard to other questions presented by the record, it is sufficient to say that the acknowledgment in the bond of payment was sufficient *prima facie* evidence of the fact, and that in the rulings of the court admitting evidence of payment in horses, and admitting evidence of the consideration of the assignment, we see no error.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.